UNITED STATES DISTRICT COURT
DISTRICT OF MINNEOSTA

| | |
|---|---|
| THOMAS LYNCH and ROSEMARY NELSON,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiffs Thomas Lynch and Rosemary Nelson, ("Plaintiffs"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant Experian Information Solutions, Inc. ("Experian"):

## INTRODUCTION

1.      Plaintiffs' Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendant Experian. Plaintiffs contend Experian failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' consumer reports, and consequently reported inaccurate information about Plaintiffs.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Experian regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiffs Thomas Lynch and Rosemary Nelson are married persons residing in the city of Blaine in Anoka County, Minnesota.

6. Plaintiffs are *consumers* as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. During all time pertinent to this Complaint, Experian was authorized to conduct business in the State of Minnesota and conducted business in Minnesota on a routine and systematic basis.

9. Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Experian regularly furnishes consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

10. During all time pertinent to this Complaint, Experian acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violation by Experian was not in good faith, was knowing, negligent, willful, and/or intentional, and Experian did not maintain procedures reasonably adapted to avoid any such violation.

**FACTUAL ALLEGATIONS**

12. Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. Experian reports consumer information about Plaintiffs and other consumers through the sale of consumer reports (credit reports).

14. Experian's credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name,

current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15.  Experian gains access to consumer information from various sources, including furnishers who provide consumer information to Experian, and information Experian independently sources itself or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16.  The information reported by Experian contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Experian's consumer credit reports.

17.  The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18.  These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19.  FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20. Amount of debt owed is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a consumer reporting agency creates an impression that the Amount of currently owed debts is higher than it actually is thereby impacting a consumer's credit score.

21. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

22. The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

23. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

24. Experian obtained and reported Plaintiffs' consumer bankruptcy information in both the Public Records section of their consumer credit reports, as well as the individual account tradelines where Experian reports accounts/tradelines as having been included in or discharged in bankruptcy.

25. Experian had notice of Plaintiffs' bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Experian reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

26. Experian is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Experian obtains the bankruptcy case information, as well as from information provided to Experian from furnishers of account/tradeline information.

28. Rather than following reasonable procedures to assure maximum possible accuracy, Experian reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Experian has obtained through its independent efforts or could easily obtain through reasonably available public records.

29. Experian is on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

30. In or around June 2016, Plaintiffs' obtained a lease with Dominium Management Service.

31. On or about May 30, 2019, Plaintiffs jointly filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Minnesota (St. Paul), case number no. 19-31747.

32. There were no objections during Plaintiffs' Chapter 7 Bankruptcy, or proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiffs' Bankruptcy was pending to pursue the Plaintiffs on any personal liability for listed debts.

33. Accordingly, Plaintiffs received an Order of Discharge, discharging their personal liability on the dischargeable debts August 27, 2019.

34. Upon information and belief following Plaintiffs' Chapter 7 Bankruptcy, Experian prepared one or more credit reports concerning Plaintiffs. Experian reported Plaintiffs' Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge.

35. Experian also reported Plaintiffs' credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

36. For accounts included in Plaintiffs' Chapter 7 Bankruptcy, including collection accounts, Experian is generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

37. Nevertheless, Experian continued to report one or more accounts inaccurately by reporting an inaccurate balance, status, and failed to report the status of the pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

38. Experian was reporting Plaintiffs' Dominium Management Services Account (the "Dominium Account"), Account no. 5XXXX, inaccurately.

39. Experian reported the Dominium Account with an owed balance of $5,538 on Plaintiff Thomas Lynch's ("Thomas") credit report, well after Plaintiff obtained a discharge of that debt.

40. Similarly, Experian reported the Dominium Account as a "Collection Account" as of September 2020, with an owed balance of $5,538 on Plaintiff Rosemary Nelson's ("Rosemary") credit report, well after Plaintiff obtained a discharge of that debt.

41. The Dominium Account was included in Plaintiffs' bankruptcy and discharged on August 27, 2019.

42. Experian did not report the Dominium Account had been discharged in bankruptcy despite reporting Plaintiffs' bankruptcy filing in the public records section of their respective credit reports, and/or reporting other unsecured pre-bankruptcy accounts as "Chapter 7 bankruptcy discharged."

43. Notably, the other national consumer reporting agencies Equifax and Trans Union did not inaccurately report the Dominium Account like Experian.

44. Upon information and belief, Dominium reported Plaintiffs' debt as included in or discharged in bankruptcy to the CRAs but Experian rejected that reporting.

45. Upon information and belief, Experian additionally and/or alternatively was on notice of Dominium's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Experian's own records and knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

46. Experian is inaccurately reporting that Plaintiffs owe debts they do not owe, thereby damaging their credit scores and impairing their ability to secure credit.

47. Experian inaccurately reports the status of these debts, even though the debts are in fact discharged, Plaintiffs are no longer personally liable for the debts, and Experian has actual knowledge Plaintiffs filed for and received a Chapter 7 Bankruptcy discharge.

48. Consequently, Plaintiffs suffered damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiffs also suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

49. Upon information and belief, Plaintiff Thomas Lynch applied for and was denied credit opportunities with Capital One Bank, NA, First Premier Bank, and Fingerhut due to Experian's inaccurate reporting which was published to Capital One Bank, NA, First Premier Bank, and Fingerhut in their review of Plaintiff Thomas Lynch's application.

50. Upon information and belief, Plaintiff Rosemary Nelson applied for and was denied credit opportunities with Capital One Bank, NA due to Experian's inaccurate reporting which was published to Capital One Bank, NA its review of Plaintiff Rosemary Nelson's application.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

51. Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

52. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

53. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

54. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

55. The FCRA requires consumer reporting agencies, like Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

56. Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information, including pertaining to debts discharged in bankruptcy that arose prior to and were included in the consumer's bankruptcy, and discharged by that bankruptcy.

57. Consequently, Experian routinely reports inaccurate, and materially misleading information about Plaintiffs, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Experian possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

58. In this case, the inaccurately reported the existence of a debt and status of the debt pertaining to Dominium Management Services debt that Experian knew predated Plaintiffs' Chapter 7 Bankruptcy and were included in/discharged by Plaintiffs' bankruptcy.

59. Experian knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Experian from which Experian is on notice of their unreasonable procedures concerning the reporting of discharged debts.

60. Experian has obtained or has available substantial written materials that apprised Experian of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

61. Experian is well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

62. Experian regularly conducts voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

63. Experian voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

64. The diligence Experian exercises in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

65. Despite knowledge of these legal obligations, Experian acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

66. Experian violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiffs' consumer disclosure.

67. Experian possesses information from which Experian should know the reported information is inaccurate, as Experian includes the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

68. Experian is also on notice of Plaintiffs' bankruptcy from other account/furnisher tradelines reported by Experian, which indicate those accounts were included in/discharged in bankruptcy.

69. Experian is well aware that discharged debts should not be reported as late, past due, and/or with an outstanding balance after the debt is discharged.

70. Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when Defendant knew or should have known the information Experian is reporting is inaccurate, and/or otherwise contradicted by information known by Experian, reported to Experian, and/or reasonably available to Experian.

71. Alternatively, Experian was negligent, entitling Plaintiffs to recover damages pursuant to 15 U.S.C. § 1681o.

72. Experian's inaccurate and negative reporting damaged Plaintiffs' creditworthiness, as Experian reports the existence owed balances and inaccurate account or payment statuses, after the filing of a bankruptcy petition for accounts that are included in and discharged by Plaintiffs' Chapter 7 bankruptcy.

73. Experian is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiffs, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain.

74. Experian is therefore liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

75. Consequently, Plaintiffs suffer damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiffs also suffer

interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Experian for the following:

Fair Credit Reporting Act Violations

(a) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 15th day of December 2020,

By: */s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 0401650
Attorney for Plaintiff
PRICE LAW GROUP, APC
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Email: jenna@pricelawgroup.com