UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Lynch and Rosemary Nelson, | Case No. 20-cv-2535 (JRT/JFD) |
| Plaintiffs, | |
| v. | **ORDER ON PLAINTIFFS'** **MOTION TO COMPEL** |
| Experian Information Solutions, Inc., | **DISCOVERY (DKT. NO. 25)** |
| Defendant. | |

This matter is before the Court on Plaintiffs Thomas Lynch and Rosemary Nelson's Motion to Compel Discovery from Defendant Experian Information Solutions, Inc. (Dkt. No. 25.) The motion concerns six Requests for Production and one Interrogatory.[1] To all of these, Defendant interposed non-specific, boilerplate objections, and also flatly stated, in response to some discovery requests, that it would neither search for nor produce any responsive documents. The seven discovery requests at issue seek both relevant and irrelevant information. The Court orders the production of only that information which is both relevant and proportionate to this case. Therefore, the motion is granted in part and denied in part, as detailed below.

I.   **Background**

Defendant is a credit reporting agency. As such, it is governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendant gathers, evaluates, and

---

[1] The Court notes that Plaintiffs included a second interrogatory, Interrogatory No. 11, in their Memorandum which appears to be in error. (Pls.' Mem. Supp. at 15, Dkt. No. 27.)

disburses information to inquiring third parties about consumers' identities, credit histories, bankruptcy filings, and creditworthiness. (Compl. ¶¶ 7, 9, 14, 16, Dkt. No. 1.) Defendant's reporting accuracy is critical because third parties rely on these reports to decide whether to extend credit to consumers. (*Id.* ¶ 16.) Under the FCRA, when credit reporting agencies like Defendant prepare a consumer report, they "shall follow *reasonable* procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).

Plaintiffs are married persons who are considered consumers under the FCRA. (Compl. ¶¶ 4–6.) Plaintiffs filed for bankruptcy in May 2019 and received an Order of Discharge in August 2019. (*Id.* ¶¶ 31–33.) Among Plaintiffs' joint debts that were discharged in bankruptcy was "the Dominium Account" that had a balance owing of $5,538 before it was discharged. (*Id.* ¶¶ 40–41.) Although Plaintiffs' Dominium Account was discharged through bankruptcy, Plaintiffs allege that Experian continued to report the Dominium Account balance as owing rather than discharged as of September 2020—more than a year after Plaintiffs' Order of Discharge—even though Defendant knew or should have known that this debt had been discharged through bankruptcy. (*Id.* ¶¶ 31–33, 36–42, 67–68.) Plaintiffs' chief claim is that Defendant's failure to follow reasonable procedures, as required by § 1681e(b), caused this error. (Compl. ¶¶ 1, 66, 70, 74.) Plaintiffs state that they suffered "credit harm, loss of credit opportunity, credit denials, . . . other financial harm, . . . interference with daily activities, as well as emotional distress." (*Id.* ¶¶ 46, 48, 72.) Plaintiffs assert Defendant is liable for "actual and statutory damages, punitive

2

damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*" (*Id.* ¶ 74.)

To ensure the accuracy of its reports for consumers in pre- and post-bankruptcy proceedings, Experian's procedure is to automatically update the status of pre-bankruptcy collection accounts for consumers whose debts are discharged in bankruptcy to ensure third party reporting accurately reflects that those accounts have been discharged. (Def.'s Mem. Opp'n at 5, Dkt. No. 36.) Experian refers to these procedures as its "bankruptcy scrub." (*Id.*) Defendant denies Plaintiffs' claims and asserts that Experian created reasonable procedures to ensure accurate consumer credit reporting; applied these procedures to Defendant's reporting on Plaintiffs' Dominium Account; caused no damage to Plaintiffs; and thus, is not liable to Plaintiffs for any violations of the FCRA under 15 U.S.C. § 1681e(b). (*See* Def.'s Mem. Opp'n.)

The case is now in discovery. Plaintiffs served their first interrogatories and requests for production of documents on Defendant in March of 2021, and Defendant served responses in May of 2021. The parties have continued exchanging requests and responses, and have met and conferred several times since these initial exchanges. (*Id.* at 7–8.) Plaintiffs argue that Defendant's responses to Requests for Production ("RFP") Nos. 15, 16, 17, 22, 26, and 32, and Interrogatory No. 15, are deficient, and Plaintiffs now move for an order compelling Defendant to supplement its responses to these discovery requests. (*See* Pls.' Mem. Supp. at 4–11, Dkt. No. 27.)

3

**II.     Governing Law**

Pursuant to Federal Rule of Civil Procedure 26, parties are entitled to liberal discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). A discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case. *Scheffler v. Molin*, No. CIV. 11-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) (citation omitted). Nonetheless, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-CV-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, Case No. 18-cv-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

The burden of showing undue burden and disproportionality is on the party resisting disclosure. *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF-KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) (citation omitted). A party resisting production cannot use boilerplate objections to meet its burden. "Routine, '[b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure.'" *Stan Koch & Sons Trucking*, 2020 WL 2111349, at *3 (quoting *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, Case No. 11-cv-2226 (DSD/LIB), 2012 WL 1633259, at *5 n.5 (D. Minn. Apr. 10, 2012)). Defendant's objections to the RFPs that are contained in its responses are almost entirely boilerplate, and therefore ineffectual. The Court gives weight only to Defendant's non-boilerplate objections—which are found in the Defendant's Memorandum in Opposition to Plaintiffs' Motion, but not in Defendant's original RFP objections.

### III. Plaintiffs' Motion to Compel Supplemental Responses to RFPs and Interrogatories

#### A. Requests for Production at Issue

Plaintiffs ask this Court to compel Defendant to supplement its responses to RFP Nos. 15, 16, 26, and 32, which collectively pertain to Experian's bankruptcy scrub procedures and may be treated as a group; RFP No. 17, which pertains to technical documents related to Experian's automatic scrub process; and RFP No. 22, which pertains to Experian's agreement with its public records vendor, Lexis Nexis. The Court will discuss each request or group of requests in turn.

5

1.      RFP Nos. 15, 16, 26, and 32

These four RFPs collectively request that Experian produce information about its bankruptcy scrub and changes to that scrub. The Court will consider RFP Nos. 15 and 16 first. RFP No. 15 asks Defendant to produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing [of] a bankruptcy." (Pls.' Ex. 1 at 6, Dkt. No. 28-1.)[2] RFP No. 16 is identical but for one word, requesting that Defendant produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing [of] a bankruptcy *discharge*." (*Id.* (emphasis added).)

Defendant argues that compliance with these RFPs would be unduly burdensome. (Def.'s Mem. Opp'n at 17.) It asserts that it instituted its bankruptcy scrub procedures in 2008, which means these RFPs seek roughly fifteen years' worth of documents. (*Id.* at 11.) Defendant also notes that Plaintiffs seek wide-ranging discovery about these scrub procedures that includes "documents, memoranda, emails, communications, manuals, guides, or other materials . . . including software and algorithms." (*Id.* (citing Pls.' Mem. Supp. at 4).) These RFPS would thus require Defendant to "identify the relevant custodians; collect potentially responsive documents, apparently dating back nearly fifteen years; engage a vendor to store and process those documents; have a team of attorneys

---

[2] The Court will refer to the parties' pagination within filed documents, rather than the page numbers assigned by the Court's ECF numbers located at the top of each page.

review documents for responsiveness and privilege; and prepare the documents for production." (Def.'s Mem. Opp'n at 17.)

The parties have agreed to limitations in the scope of discovery for some—although not all—of the RFPs at issue. The Court understands that RFP Nos. 15, 16, and 32 were not originally time limited (*see* Pls.' Ex. 1 at 6; *see also* Def.'s Ex. D at 5, Dkt. No. 38-4), but that the parties now agree to limit RFP No. 32 to "emails and documents since January of 2020." (Pls.' Reply at 2, Dkt. No. 43.) The Court also understands that RFP No. 26 was originally limited to materials beginning in 2008 "as a result of the Settlement Order in *Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Complaint filed Nov. 2, 2005)[,]" and that this remains the current scope of this RFP (Pls.' Ex. 1 at 7.) Defendant appears to understand RFP Nos. 15 and 16 to share RFP No. 26's original temporal limitation extending back to 2008, if any, and Plaintiffs do not appear to object. (Def.'s Mem. Opp'n at 11.)

In a case that turns on the reasonableness of a bankruptcy scrub, documents providing information about how Experian conducts that scrub are relevant. However, Plaintiff's use of the locution "all" materials for RFP Nos. 15, 16, 26, and 32, the omission of a time limit for RFP Nos. 15 and 16, and the omission of a time limit for anything that is not a "document or email" in RFP No. 32, renders these RFPs disproportional. The Court will therefore limit the materials Experian must produce, but will do so against background facts that include Experian being a large organization whose very business is to absorb and manage records in astronomical numbers, and that Experian and its counsel have a sophisticated understanding of federal consumer credit litigation, including the current

7

action. The resources of the parties are a 26(b) proportionality factor, but over and above that, the Court holds Experian at least partly responsible for the creation of the conditions that contribute to the amount of work required to respond to RFPs such as Nos. 15, 16, 26, and 32. "[P]ermitting 'a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.'" *Beseke*, 2018 WL 6040016, at *4 (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976); *accord Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 321 n.68 (S.D.N.Y. 2003)).

Regarding RFP Nos. 15 and 16, Plaintiffs' Motion is denied in part, and granted in part. Defendant must produce all documents that allow one experienced and knowledgeable about consumer credit reporting—such as Plaintiffs' counsel—to fully understand how Experian's bankruptcy scrub worked from the date in May 2019 when Plaintiffs filed for bankruptcy, through and including October 5, 2020, the date on which Defendant states it "updated the Dominium account to report [it] as discharged in bankruptcy with no balance." (Def.'s Mem. Opp'n at 1.) To do this, Defendant must begin by producing to Plaintiffs the documents that (a) will give a comprehensive description of its bankruptcy scrub and (b) most immediately precede Plaintiffs' May 2019 filing for bankruptcy. Therefore, responsive discovery must be produced from within in a search window of between May 1, 2019, through and including October 5, 2020. This could take the form of an employee manual or an operating guide, but whatever form it takes, Defendant must produce it. Defendant must then also produce amendments to that comprehensive description. If, for example, an email was sent from Experian management

to all employees with responsibility for the bankruptcy scrub changing that scrub, that email must be produced, provided it was sent or received within the temporal window that the parties have agreed to for production of emails. Likewise, as another example, if a training session was conducted for employees to teach them about changes to the bankruptcy scrub since May of 2019, the training materials must be produced setting forth the changes to the scrub must be produced.

Defendant objects to what it characterizes as Plaintiffs' overbroad document requests. Illustrating their objection with an example, Defendant points out that Plaintiffs seek documents relevant to the specific account category of "finalized status." (Pls.' Mem. Supp. at 8.) Defendant objects to producing documents concerning Experian's classification of accounts deemed to be in "finalized status," because, it points out, the Dominium Account was never in finalized status. (Def.'s Mem. Opp'n at 12.) The Court holds that the Defendant has the better of these arguments. Defendant shall limit its production of documents responsive to RFP Nos. 15 and 16, as outlined by the Court in the preceding paragraph, to documents that show either: (1) how the bankruptcy scrub works in general, or (2) how the bankruptcy scrub works specifically when run against debts that had a positive balance both before and after discharge in bankruptcy, as Plaintiffs' Dominium Account did. (Compl. ¶¶ 37–38.)

To anticipate and preempt a dispute that may arise in the future, Defendant *must* produce documents that describe, comprehensively, how its bankruptcy scrub worked between the time shortly before Plaintiffs filed for bankruptcy, beginning on May 1, 2019, through and including October 5, 2020. The fact that a document may include a discussion

9

of debt types other than the type to which the Dominium Account belonged does not spare such a document from production. Defendant may exclude only documents that contain nothing but a description of how the bankruptcy scrub works when it encounters debts that are not the same type of debt as the Dominium Account. For example, if an employee sends an email, post-training session, seeking clarification about how to work the bankruptcy scrub on a debt that showed a zero balance before bankruptcy discharge, but post-bankruptcy discharge was shown as "charged off," then that email exchange may be omitted from production, because it concerns a type of debt different from the Dominium Account. But if that email also includes information about how the bankruptcy scrub works when it encounters debts of the type to which the Dominium Account belongs, it must be produced.

In their supporting Memorandum, Plaintiffs try to amend the scope of RFP Nos. 15 and 16 by asserting that they seek information about Experian's "failure to meet [its] industry standard[,]" which necessitated the updates to its bankruptcy scrub procedures made on its own, and made in response to the *White* Order. (Pls.' Mem. Supp. at 6–8 (referring to a detailed injunction, entered by the U.S. District Court for the Northern District of California in *Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Complaint filed Nov. 2, 2005), resolving a large and complicated consumer credit case before it).) Plaintiffs claim these four RFPs sought evidence of the alleged substandard unreasonableness of Experian's scrub procedures which allegedly caused Plaintiffs' harms, and in response, Defendant failed to disclose the underlying documents about those scrub procedures, its knowledge about "other national

consumer reporting agencies' scrub procedures," or how and when Experian's updates closed that allegedly unreasonable gap. (*Id.* at 7–8.) The difficulty, of course, is that RFP Nos. 15 and 16 do not seek information about any alleged national standard of reasonableness across the consumer reporting industry. The RFPs *as served* are the operative discovery request that Plaintiffs have made of Defendant, not an attempted amendment of that discovery request in a memorandum supporting a motion to compel. Defendant need neither search for nor produce documents bearing on any alleged industry standard of reasonableness. Therefore, Plaintiffs' Motion is granted in part and denied in part as to RFP Nos. 15 and 16.

RFP No. 26 asks Defendant to produce "[a]ll documents, memoranda, emails, communication, manuals, guides, or other materials relating to your policy changes and implementation, including software and algorithms, as a result of the Settlement Order in *Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Complaint filed Nov. 2, 2005)." (Pls.' Ex. 1 at 7.)

The U.S. District Court for the District of Minnesota has held, several times, that the *White* injunction is not binding on this Court. *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 771 (D. Minn. 2020) ("That a report complies with the *White* settlement does not by itself establish that the report complies with § 1681e(b), however. After all, *White* is not binding on this Court."). There may be an argument to be made that adherence to the *White* injunction is a measure of reasonableness. *See Peterson v. Experian Information Solutions, Inc.*, 526 F. Supp. 3d 482, 486 (D. Minn. 2021) (even though *White* is not binding on courts in this district, "*White* may nevertheless be instructive regarding

the reasonableness of Experian's procedures and reporting"). But Plaintiffs do not attempt to establish adherence or non-adherence to *White* as an appropriate measure of reasonableness. (*See* Pls.' Mem. Supp. at 6.) Because of this, the Court has no occasion to decide whether, even if *White* establishes a standard of reasonableness, production of documents responsive to RFP No. 26 would be proportional. Therefore, the Court denies Plaintiffs' Motion regarding RFP No. 26.

RFP No. 32 requests that Defendant produce "[a]ll emails, communications, or memoranda sent or distributed to any and all Experian personnel that provided information related to any changes to Experian's post-bankruptcy scrub procedures outlined in the stipulation provided by Experian for use in all post-bankruptcy related cases." (Def.'s Ex. D at 5.) The analysis of RFP Nos. 15 and 16 above also applies to RFP No. 32, and Plaintiffs' Motion is also granted in part and denied in part as to this RFP.

### 2. RFP No. 17

This RFP requests that Experian produce technical documents related to Experian's automatic scrub process. Specifically, RFP No. 17 asks Defendant to produce "[a]ny documents or system manuals identifying how post-bankruptcy credit reports such as Plaintiffs' are scrubbed through your automated process (if a person is involved please explain what involvement they have)." (Pls.' Ex. 1 at 6.)

To support this RFP, Plaintiffs argue that Experian has admitted that the scrub sometimes fails to perform as intended, making its automated scrub procedures—and any adjustments to them—relevant to determining whether Experian's use of unreasonable procedures caused Plaintiffs' harms. (Pls.' Mem. Supp. at 14.) Plaintiffs further contend

12

that confidentiality need not hinder Defendant's production, since there is a protective order already in place for such confidential discovery productions. (*Id.*)

Defendant argues it automatically updated information about Plaintiffs' Dominium Account according to the highly confidential programmed design of its bankruptcy scrub—which worked as intended—as already disclosed in multiple declarations that need not be duplicated again through supplementing Experian's disclosures. (Def.'s Mem. Opp'n at 20–21 (citing Simmons Decl. ¶ 19, Dkt. No. 37; Pls.' Ex. 3 at 18–19).) Thus, Defendant responded that it "[would] not search for or produce any documents related to its implementation of the bankruptcy scrub[,]" but would "produce the Credit Resource Reporting Guide, as well as relevant excerpts from its Disputes: Trades guide, in response to this Request." (Pls.' Ex. 3 at 19.)

A declaration alone is not a proper response to an RFP, which, by its nature, calls for the production of documents and other things, not the generation of new documents. *See* Fed. R. Civ. P. 34(b)(2). Plaintiffs are entitled to see relevant, proportional documents in response to an RFP, and Plaintiffs' objection to Defendant's practice of responding to RFPs with declarations is well taken. (The Court expresses no disapproval of providing declarations in response to interrogatories, but notes that the declarations in this case, which Defendant has apparently produced in numerous other cases, do not specify which RFP or interrogatory they are responding to.) While the Simmons and Johnson Declarations contain information that seems responsive to RFP No. 17, the provision of these declarations cannot foreclose Plaintiffs' right to view the relevant and proportional

technical documents related to Experian's automatic scrub process themselves to determine if relevant evidence supporting the Plaintiffs' claims resides in those domains.

Given the resolution the Court has given to the parties' dispute over RFP Nos. 15 and 16, the dispute over RFP No. 17 is moot. The Court agrees with Plaintiffs that Defendant should undertake a good faith search for the requested information responsive to this RFP but notes that discovery responsive to this RFP is also responsive to RFP Nos. 15 and 16, and the Court has directed that Defendant must respond to them, subject to a limiting timeframe. While the Court is not convinced that Experian's scrub procedure adjustments reflect unreasonableness (it is just as likely, on the existing record, that they reflect the sort of continuous updates one expects of a conscientiously operated business), Plaintiffs allege there is a causal connection between Experian's unreasonable scrub procedure and Plaintiffs' harms. Therefore, Plaintiffs may seek to discover evidence to support their claim and to defeat Defendant's affirmative defense that Defendant used reasonable scrub procedures, subject to the narrowed scope of technical documents since May 1, 2019.

### 3. RFP No. 22

In RFP No. 22, Plaintiffs seek "[a]ll agreements under which any public record vendor reported information or accessed information relating to Plaintiffs from one year preceding the filing of Plaintiffs' bankruptcy to the present." (Pls.' Ex. 1 at 7.) In support, Plaintiffs argue Experian raises the affirmative defense that its procedures are reasonable, and part of its procedures relate to its reliance on third party vendor Lexis Nexis, whose information Experian uses to generate its reports. (Pls.' Mem. Supp. at 12–13.)

Defendant argues that Plaintiffs have not alleged that Defendant caused their harms with its allegedly unreasonable reliance upon Lexis Nexis—either in what information the public record vendor provided, or in Experian's procedures to obtain it. (Def.'s Mem. Opp'n at 13; Pls.' Ex. 3 at 22, Dkt. No. 28-3.) Thus, Defendant responded that it "[would] not search for or produce any documents in response to this Request." (Pls.' Ex. 3 at 22.)

The Court agrees with Defendant that most of the discovery Plaintiffs seek in RFP No. 22 does not fall within the ambit of Federal Rule of Civil Procedure 26(b)(1). That Rule authorizes discovery only of matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiffs cite *Olwell v. Med. Info. Bureau*, No. 01-cv-1481 (JRT/FLN), 2003 WL 79035, at *1 (D. Minn. Jan. 7, 2003) to support their claim that reporting agencies have a duty to investigate whether a source they rely on is unreliable when a consumer alleges such facts. However, in *Olwell*, the Plaintiff alleged not only failure to take reasonable steps to ensure an initial report's accuracy, but also failure to reinvestigate when notified of the inaccuracy. *Id.* at *2. Plaintiffs have not alleged that Lexis Nexis reported Plaintiffs' information incorrectly to Experian, or that Experian knew or should have known that Lexis Nexis was an unreliable source requiring Experian to implement more reasonable accuracy-screening procedures that should have been used in Plaintiffs' cases. Plaintiffs have also not alleged that Experian failed to investigate Lexis Nexis' part in the alleged inaccuracy. But most importantly, Plaintiffs have not connected the agreements Experian has with third-party vendors such as Lexis Nexis with Plaintiffs' harms. Courts "remain reluctant to allow any party to 'roam in the shadow of relevancy and to explore matter[s] which [do] not presently appear germane on the theory that it

15

might conceivable become so.'" *Keller v. Pepsi Bottling Grp., Inc.*, No. CV 07-1473 (MJD/AJB), 2007 WL 9735622, at *3 (D. Minn. Aug. 27, 2007) (citation omitted). Mere speculation about relevance is not sufficient.

A portion of the discovery sought by RFP No. 22 is relevant, however; namely, communications from Lexis Nexis to Experian, if any, warning Experian that the data was untrustworthy, unreliable, should be treated with caution, or similar words. Therefore, Experian is required to undertake a good faith search for such documents, including portions of the contract between Experian and data providers. For this reason, Plaintiffs' motion to compel Defendant to search for and produce additional information concerning RFP No. 22 is denied for the most part, but granted to the extent that documents containing precatory language about the reliability of the information provided must be produced.

### B. Interrogatory Responses at Issue

Plaintiffs ask this Court to compel Defendant to supplement its responses to Interrogatories No. 11 and 15, which the Court will take in turn below.

#### 1. Interrogatory No. 11

Plaintiffs' Memorandum in support of their Motion to Compel contains a puzzling paragraph about Interrogatory No. 11. (Pls.' Mem. Supp. at 15.) Defendant agrees that there is no dispute about Interrogatory No. 11 before this Court. (Def.'s Mem. Opp'n at 8 n.3.) Therefore, the Court has no occasion to decide anything related to this Interrogatory.

#### 2. Interrogatory No. 15

Plaintiffs also ask this Court to compel Defendant to supplement its response to Interrogatory No. 15, which pertains to records of Experian's disclosures made to third

parties about Plaintiffs' account between September 21 and October 5, 2020. Specifically, Interrogatory No. 15 asks Defendant to "[i]dentify and describe all documents, data and information you provide to creditors, subscribers and/or third parties, in response to a Soft Inquiry or Account Review Inquiry." (Pls.' Ex. 2 at 8, Dkt. No. 28-2.) Plaintiffs have since agreed to narrow the scope of this inquiry to third party inquiries for Plaintiffs between September 21 and October 5, 2020. (Def.'s Mem. Opp'n at 24 n.8.)

To support this interrogatory, Plaintiffs argue this request is relevant and proportional because they seek what information Defendant disclosed about Plaintiffs "during the time Experian reported inaccurate information about Plaintiffs to third parties." (Pls.' Mem. Supp. at 15.) Plaintiffs argue that discovery of Experian's subscriber agreement in Exhibit 7, which contains language about Experian's procedures relating to the information disclosed during credit inquiries, suggests that there are more records responsive to this Interrogatory than those Defendant has disclosed. (*Id.* at 16.)

Defendant's primary objection to this request is that Experian does not maintain a record of the specific information it provides to inquiring parties, but rather, maintains types of account information that may be provided for different types of inquiries. (Def.'s Mem. Opp'n at 25.) Specifically, Defendant argues that how it reported out Plaintiffs' information is not probative of the reasonableness of its procedures related to Plaintiffs' Dominium account. (Pls.' Ex. 4 at 20.) Defendant further contends that this request is not appropriately limited to only Plaintiffs' inquiry record within Experian's approximately 200 million consumer accounts, and even if it was, Plaintiffs alone have over 100 soft inquiries for their file, making a review of each response to an inquiry unduly burdensome.

17

(*Id.* at 20–21; Def.'s Mem. Opp'n at 25.) Because Defendant has disclosed which entities received information from Experian about Plaintiffs, Defendant argues that Plaintiffs should seek this information from those less burdensome, alternative sources. (Def.'s Mem. Opp'n at 25–26.)

The Court agrees with Defendant that the discovery Plaintiffs seek in Interrogatory No. 15 is unavailable because Experian asserts it keeps no record of this information. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (noting that as a practical matter, a court must accept a party's representation that it has produced all documents responsive to a request or that it has no such documents). For this reason, Plaintiffs' Motion to further compel Defendant to produce documents concerning Interrogatory No. 15 is denied.

However, some information covered by Interrogatory No. 15, and apparently still available, may be relevant to Plaintiffs' damages. In June of 2021, the Supreme Court held, in *TransUnion, LLC v. Ramirez*, 1421 S. Ct. 2190 (2021), that a plaintiff suffers concrete harm—and so has Article III standing—when an inaccurate credit report is disseminated. *Id.* at 2197. During oral arguments at the hearing on this Motion, Defendant stated that information about Plaintiffs had been disclosed on two occasions before the inaccurate reporting of the Dominium Account had been corrected. Defendant has also provided to Plaintiffs the identity of the two parties to whom these disclosures were made. This is sufficient, and no further response need be made.

IV. **Additional Litigation Matters**

The Court closes with two words of caution, one for Plaintiffs and one for

18

Defendant. The tone of Plaintiffs' writing in their Memorandum in Support of its Motion to Compel is inappropriate. Rather than laying out a legal dispute, Plaintiffs accuse Defendants of stonewalling, make claims that Defendant is engaged in a deliberate effort to hide the truth, and so on. These aspersions diminish the persuasive value of a party's positions. As to Defendant, a discovery request should not be responded to with a statement that responsive documents will not even be searched for. If Defendant believes that a discovery request is irrelevant or disproportionate (or both), then the proper recourse is either to engage in this Court's Informal Dispute Resolution Process, or to file a motion for a protective order. The Court respects both attorneys in this case and is confident that nothing more will need to be said on either point.

### V.     Defendant's Request for an Award of Costs and Fees

Defendant has asked for an award of costs and fees pursuant to Federal Rule of Civil Procedure 37(a)(5). When a motion to compel is granted, a court should not order the payment of expenses when (1) the movant did not attempt to obtain the discovery without court involvement; (2) the opposition party's position was substantially justified; or (3) an award would be unjust. Fed. R. Civ. P. 37(a)(5). Here, given the parties' multiple attempts to meet and confer, and the fact that the Court grants in part and denies in part Plaintiffs' Motion, the Court finds that an award of expenses would be unjust. Each side will bear their own fees and expenses.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Defendant to produce Discovery

(Dkt. No. 25) is **GRANTED** in part and **DENIED** in part as set forth above, and Defendant's Motion for an award of fees and costs is **DENIED.**

Dated: November 3, 2021  *s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge