## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas Lynch and Rosemary Nelson,

      Plaintiffs,

v.

Experian Information Solutions, Inc.,

      Defendant.

Case No. 20-CV-2535 (KMM/JFD)

**ORDER ON PLAINTIFFS' MOTION
TO COMPEL DISCOVERY**

**FILED UNDER SEAL**

This matter is before the Court on Plaintiffs Thomas Lynch and Rosemary Nelson's Motion to Compel Discovery (Dkt. No. 68). This Court held a motions hearing on January 28, 2022, at which Jenna Dakroub represented Plaintiffs, and Christopher Johnson and Gregory Myers represented Defendant. (*See* Hr'g Mins, Dkt. No. 104; Hr'g Tr., Dkt. No. 122.)

Plaintiffs' Motion concerns seven specific requests relating to three broader requests for production ("RFP"), RFP Nos. 15, 16, and 32. In response to Plaintiffs' Motion, Defendant Experian Information Solutions, Inc. interposes objections and asks the Court to deny the Motion entirely and to grant it an award of costs and fees in defending against it. (*See* Def.'s Mem. Opp'n at 4, Dkt. No. 93.) To resolve these disputes, the Court orders the production of only that information which is both relevant and proportional to this case. Therefore, Plaintiffs' Motion is granted in part and denied in part, as set forth below.

## I.    BACKGROUND

Defendant is a credit reporting agency, governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendant gathers, evaluates, and disburses

information to inquiring third parties about consumers' identities, credit histories, bankruptcy filings, and creditworthiness. (Compl. ¶¶ 7, 9, 14, 16, Dkt. No. 1.) Defendant's reporting accuracy is critical because lenders rely on Defendant's reports to decide whether to extend credit to consumers. (*Id.* ¶ 16.) Under the FCRA, when credit reporting agencies like Defendant prepare a consumer report, they "shall follow *reasonable* procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). To ensure the accuracy of its reports for consumers going through bankruptcy, Experian's procedure is to automatically update the status of pre-bankruptcy collection accounts when consumers' debts are discharged in bankruptcy. This is meant to ensure Defendant's reports accurately reflect that those accounts have been discharged. (Def.'s Mem. Opp'n at 5.) Experian refers to these automatic procedures as its "bankruptcy scrub." (*Id.*)

Plaintiffs are married persons who are considered consumers under the FCRA. (Compl. ¶¶ 4–6.) Plaintiffs filed for bankruptcy in May 2019 and received an Order of Discharge in August 2019. (*Id.* ¶¶ 31–33.) Among Plaintiffs' joint debts that were discharged in bankruptcy was "the Dominium Account" that had a balance owing of $5,538 before it was discharged. (*Id.* ¶¶ 40–41.) Although Plaintiffs' Dominium Account was discharged through bankruptcy, Plaintiffs allege that Experian was still reporting the Dominium Account balance as owing rather than discharged as of September 2020—more than a year after Plaintiffs' Order of Discharge—even though Defendant knew or should have known that this debt had been discharged through bankruptcy. (*Id.* ¶¶ 31–33, 36–42, 67–68.) Plaintiffs' chief claim is that Defendant's failure to follow reasonable procedures,

2

as required by § 1681e(b), caused this error. (Compl. ¶¶ 1, 66, 70, 74.) To support their claim that the bankruptcy scrub is not a reasonable procedure, Plaintiffs seek discovery into how Experian's bankruptcy scrub operates and whether  Experian knew of any shortcomings in the bankruptcy scrub order. Plaintiffs state that, because of Defendant's failure, they suffered "credit harm, loss of credit opportunity, credit denials, . . . other financial harm, . . . interference with daily activities, as well as emotional distress." (*Id.* ¶¶ 46, 48, 72.) Thus, Plaintiffs assert that Defendant is liable for "actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*" (*Id.* ¶ 74.)

Defendant denies Plaintiffs' claims and asserts that Experian created reasonable procedures to ensure accurate consumer credit reporting, applied these procedures to Defendant's reporting on Plaintiffs' Dominium Account, caused no damage to Plaintiffs, and so is not liable to Plaintiffs for any violations of the FCRA under 15 U.S.C. § 1681e(b). (Answer at 2, 21–22, Dkt. No. 12.)

The case has been in discovery for approximately one year. (*See* Pretrial Sched. Order at 19.) The initial Scheduling Order has been amended twice (Dkt. Nos. 52, 67), and fact discovery closed on March 7, 2022. (Second Am. Pretrial Sched. Order at 1, Dkt. No. 67.) Plaintiffs served their first interrogatories and RFPs on Defendant in March of 2021, and Defendant served responses in May of 2021. (Pls.' Mem. Supp. Aug. Mot. at 2, Dkt. No. 27.)

On August 26, 2021, Plaintiffs filed their first Motion to Compel Discovery. (Dkt. No. 25.) In their Motion, Plaintiffs argued that Defendant's responses to RFP Nos. 15, 16,

17, 22, 26, and 32, and Interrogatory No. 15, were deficient, and moved for an order compelling Defendant to supplement its responses to these discovery requests. (*See* Pls.' Mem. Supp. Aug. Mot. at 4–11.) On November 3, 2021, the Court granted in part and denied in part Plaintiffs' Motion and ordered Defendant to supplement its responses to RFP Nos. 15, 16, and 32 by producing all documents that would allow a full understanding of how Experian's bankruptcy scrub worked from May 1, 2019 through October 5, 2020. (Nov. 3 Order at 9.) The Court held that these ordered productions included documents allowing a general understanding of the scrub, or documents showing how the scrub worked when run against debts similar to Plaintiffs' Dominium Account—even if those documents contained information about other types of accounts as well. (*Id.* at 10.) The Court excluded from Defendant's required supplementation "documents bearing on any alleged industry standard of reasonableness[,]" such as Experian's knowledge about other national consumer reporting agencies' bankruptcy scrub procedures. (*Id.* at 10–11.) For reasons of proportionality, the Court expressly limited Experian's disclosure obligations as to these RFPs pertaining to its bankruptcy scrub to documents from May 1, 2019 through October 5, 2020. (*Id.* at 9.)

Plaintiffs filed the instant Motion to Compel Discovery on December 20, 2021, and again ask the Court to order Defendant to supplement its responses to RFP Nos. 15, 16, and 32, alleging that Defendant has failed to comply with the Court's November 3 Order to supplement its productions in response to these RFPs. (Pls.' Mem. Supp. at 1–2, Dkt. No. 70.) Defendant opposes Plaintiffs' Motion, arguing that it has fully complied with the Court's November 3 Order to produce all nonprivileged responsive discovery, and that

4

Plaintiffs inexplicably claim that the Court ordered Defendant to produce documents that the Court clearly did not require. (Def.'s Mem. Opp'n at 3–4.)

## II.    GOVERNING LAW

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, "broadly" is not synonymous with "limitless"; a party can only discover what is relevant to the actual claims or defenses that are at issue. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit." *Id*. A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-CV-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, Case No. 18-CV-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may move a court for an order compelling the responding party's production. Fed. R. Civ. P. 37. Again, once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting disclosure. *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF/KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) (citation omitted).

## III.    DISCUSSION

The disputes in question relate to three different RFPs directed to Defendant by Plaintiffs: RFP Nos. 15, 16, and 32. RFP No. 15 asks Defendant to produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing [of] a bankruptcy." (Pls.' Ex. 1 at 6, Dkt. No. 71-1.)  RFP No. 16 is identical but for one word, requesting that Defendant produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing

[of] a bankruptcy *discharge*." (*Id.* (emphasis added).) Finally, RFP No. 32 requests that Defendant produce "[a]ll emails, communications, or memoranda sent or distributed to any and all Experian personnel that provided information related to any changes to Experian's post-bankruptcy scrub procedures outlined in the stipulation provided by Experian for use in all post-bankruptcy related cases." (Pls.' Ex. 2 at 4–5, Dkt. No. 71-2.) The Court will discuss each of Plaintiffs' seven discovery requests relating to these three RFPs in turn.

### A.    Request One: The Documents Discussed by Ms. Rogers

Plaintiffs claim that, in noncompliance with the Court's November 3 Order, Defendant has failed to produce

> [d]ocuments that detail the changes made to the scrub in 2021, which Ms. Rogers testified exist during a deposition in a similar case. *See* Rogers Depo., *Cherannzetta Stagger v. Experian Information Solutions, Inc.*, Case No. 1:21-cv-02001 (N.D. Ill), Doc. 25-9 at 43:8–48:5.

(Pls.' Mem. Supp. at 5–6.) Plaintiffs argue that, because the November 3 Order required production of documents showing how the 2021 scrub worked, and because Ms. Rogers testified about the 2021 scrub changes, these documents are unquestionably relevant and fall within materials that Defendant must produce in response to RFP Nos. 15, 16, and 32 to comply with the Court's November 3 Order. (*Id.* at 8.) At oral argument, Plaintiffs' counsel was asked how, in light of the date window set out in the Court's November 3 Order, Plaintiffs could move to compel production of documents generated outside that window. Plaintiffs' counsel responded that she may have misunderstood the November 3 Order.

7

Defendant argues that the documents Plaintiffs seek are dated January 8, 2021, and February 24, 2021, clearly falling outside of the November 3 Order's end date for proportional discovery of October 5, 2020. (Def.'s Mem. Opp'n at 12.) Moreover, Defendant claims that it has already properly logged these emails as protected by the attorney-client privilege and work-product doctrine because they "were sent to Experian's outside counsel, at the direction of Experian's inside counsel, in order to obtain legal advice" and "to provide information related to Jones Day's representation of Experian in ongoing litigation." (*Id.* at 13 (citing Rozak Decl. ¶ 5, Dkt. No. 95; *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (discussing the attorney-client privilege); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977) (en banc) (discussing the attorney-client privilege and work-product doctrine); Fed. R. Civ. P. 26(b)(3) (discussing that trial preparation materials are generally not discoverable)).) Defendant also argues that these emails are not necessary for a comprehensive understanding of how the bankruptcy scrub worked, and that Experian has already produced the information necessary to do so in response to the November 3 Order. (*Id.* at 14.)

The Court denies Plaintiffs' request as to the documents that Ms. Rogers testified to because, while they are relevant, ordering their production would not be proportional. The dispute that has led to this litigation is whether Experian's bankruptcy scrub was a reasonable procedure within the meaning of the FCRA, and if so, *whether the scrub operated properly as to the Plaintiffs' Dominium account*. The Court has therefore, in its November 3 Order, limited Experian's obligation to produce scrub-related documents to

the time during which the Plaintiffs' Dominium account was, allegedly, mischaracterized. That window of time ends on October 5, 2021.

The Court finds that the requested information, detailing changes that Experian made to its scrub in the year following its reporting on Plaintiffs' Dominium account, is relevant evidence of whether Experian knew its scrub required updating – in other words, whether Experian was aware its scrub was an unreasonable reporting practice.

The Court has already found, in its November 3 Order, that Plaintiffs' "omission of a time limit for RFP Nos. 15 and 16, and the omission of a time limit for anything that is not a 'document or email' in RFP No. 32, rendered these RFPs disproportional." (Nov. 3 Order at 7.) To remedy this, the Court ordered Defendant to produce "responsive discovery . . . from within . . . a search window of between May 1, 2019, through and including October 5, 2020." (*Id.* at 8.) The Court created this timeframe to proportionally tailor the discoverable relevant materials to the needs of this case.

The Court's proportionality analysis has not changed since its November 3 Order. Understanding how Experian's bankruptcy scrub ran during the period between "May 2019 when Plaintiffs filed for bankruptcy, through and including October 5, 2020, the date on which Defendant states it 'updated the Dominium account to report [it] as discharged in bankruptcy with no balance[,]'" remains central to what is at stake in this action—whether Experian's procedures were reasonable, as required by § 1681e(b). (*Id.*) Yet the burden or expense of permitting Plaintiffs to exhaust every possible avenue of relevant discovery without limiting parameters would produce burdensome and expensive discovery productions that far exceed their likely benefit under Rule 26. (*Id.*) While this action is

undeniably resource-intensive, and while the discovery sought is wholly in Defendant's control, the amount in controversy is unknown, and even Defendant's greater resources when compared to Plaintiffs' do not outweigh the need to proportionally limit discovery to the needs of the case. Because Plaintiffs did not provide a proportionality metric in their RFP Nos. 15 and 16, or as to anything except documents and emails in RFP No. 32, the Court fashioned one for them in the November 3 Order's limiting timeframe. This is one risk of bringing motions to compel; the Court may not fashion the limitations that the parties might prefer. Here, the documents that Plaintiffs seek are dated January 8, 2021, and February 24, 2021. (Def.'s Mem. Opp'n at 12.) They fall outside the Court's proportionally-limited period that ends on October 5, 2020, and consequently, the Court will not order their production. (Nov. 3 Order at 8.)

For the sake of clarity, and to avoid future misunderstandings of the sort claimed by Plaintiffs' counsel at oral argument on this Motion, this Court has ruled that requiring Experian to produce documents pertaining to its bankruptcy scrub in response to Plaintiffs' RFP Nos. 15, 16, and 32 that were generated before May 1, 2019 or after October 5, 2020 is not proportional to the needs of this case.

Moreover, Defendant claims that the documents are privileged and has logged these privileged materials accordingly. (Def.'s Mem. Opp'n at 13.) Rule 26 entitles parties to liberal discovery of "any *nonprivileged* matter" that is relevant and proportional, and Plaintiffs have not made a showing that Defendant's privilege is overcome by Plaintiffs' need. Fed. R. Civ. P. 26 (emphasis added); *see also Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (discussing that "work product is not discoverable unless the

party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means"); *Upjohn*, 449 U.S. at 395 (discussing the importance of protecting attorney-client-privileged materials against compelled disclosure). Therefore, the Court denies Plaintiffs' Motion as to the request for the documents that Ms. Rogers testified about because this discovery is not proportional to the needs of the case and seeks information that is properly shielded by the attorney-client privilege and work product doctrine.

### B.    Request Two: The Presentation Discussed by Ms. Simmons

Plaintiffs next argue that, in noncompliance with the Court's November 3 Order, Defendant has failed to produce

> [t]he presentation regarding the 2021 bankruptcy scrub changes, which Experian's representative Ms. Simmons testified about during depositions in *Batie* and *Moore*. *See* Simmons Depo., *Andrea Batie v. Experian Information, Inc.*, Case: 1:20-cv-04983 (MMP/HKM) (E.D. Ill. 2021). Doc. 48-12 at 51:3–53:22.

(Pls.' Mem. Supp. at 6.) Plaintiffs contend that Ms. Simmons' presentation falls within the November 3 Order's required production of documents showing how the scrub worked, and are thus also unquestionably relevant and must be produced. (*Id.* at 8.)

Defendant responds that the presentation that Plaintiffs seek is dated October 15, 2020, which falls outside of the November 3 Order's timeframe that ended on October 5, 2020. (Def.'s Mem. Opp'n at 15.) Defendant claims that, even if it did fall within the timeframe of that Order, the presentation has been properly logged as protected by the attorney-client privilege and work-product doctrine because it was "drafted and presented at the direction of Experian's inside counsel for the purpose of providing legal advice" and

11

"of communicating work-product information related to ongoing litigation." (*Id.* (citing Rozak Decl. ¶ 6; *Upjohn*, 449 U.S. at 390, 394–95; *Diversified Indus.*, 572 F.2d at 601–03).) Defendant also contends that this presentation is not necessary for a comprehensive understanding of how the bankruptcy scrub worked, and that Experian has already produced the information necessary to do so in response to the November 3 Order. (*Id.* at 16.)

The Court denies Plaintiffs' request as to this presentation because ordering its production would not be proportional. The analysis for the presentation that Plaintiffs seek is identical to that above regarding the materials sought in connection with Ms. Rogers's testimony. Here, the presentation that Plaintiffs seek is dated October 15, 2020. (Def.'s Mem. Opp'n at 15.) Thus, the same weighing of proportionality factors as above for request one applies here. This discovery falls outside the Court's proportionally-limited period that ends on October 5, 2020. (Nov. 3 Order at 8.) Additionally, Defendant claims that the material sought is covered by the attorney-client privilege and work product doctrine, and it has properly logged the presentation accordingly. (Def.'s Mem. Opp'n at 15.) Thus, the same privilege and work product doctrine analysis as above in request one also applies here. For these reasons, the Court denies Plaintiffs' Motion as to the request for the presentation identified by Ms. Simmons because this discovery is not proportional to the needs of this case and seeks what remains properly shielded by attorney client privilege and the work-product doctrine.

### C.    Request Three: The Documents Related to the "Should we?" Comment

Next, Plaintiffs argue that, in noncompliance with the Court's November 3 Order, Defendant has failed to produce requested

> [d]ocuments that either answer or pertain to the comment on page 9 of the System Requirements & High-Level Design document . . . "Zero balance & account is current—We are not checking for zero balance. Should we?" Ex. 5.

(Pls.' Mem. Supp. at 6.) Plaintiffs claim that these documents are relevant to understanding how Experian determines that it need not consider whether accounts have balances in its scrub procedures, and are proportional because they are encompassed by the Court's November 3 Order. (*Id.* at 8.)

Defendant responds that Plaintiffs fundamentally misunderstand the comment posed in the "System Requirements & High-Level Design document," and its bearing on the productions ordered by this Court's November 3 Order. (Def.'s Mem. Opp'n at 16.) To explain why, Defendant cites to the *White* Order from *White v. Experian Info. Sols., Inc.*, No. 05-CV-1070 (DOC), 2008 WL 11518799, at *1–17 (C.D. Cal. Aug. 19, 2008), an injunction entered by the U.S. District Court for the Northern District of California resolving a large and complicated consumer credit case before it. (*Id.* at 17.) Defendant claims that the *White* Order dictates Experian's reasonable procedures, and the *White* Order does not require it to check for a zero balance on current accounts; therefore, Experian does not perform such a check. (*Id.*) According to Defendant, the comment "Should we?" posed in the document at issue is merely asking for confirmation of what the *White* Order requires. (*Id.*)

13

Additionally, Defendant claims that it has investigated the comment, and that an "Alice Densmore" wrote the comment on or before July 11, 2009. (*Id.* at 18.) After searching, Defendant claims that it has found no additional responsive documents about this comment that it could produce. (*Id.* (citing *Bolden v. Officer Mark Beaupre*, No. 07-CV-4702 (ADM/JSM), 2010 WL 11640026, at *6 (D. Minn. Jan. 11, 2010) (noting that Court cannot compel what does not exist)).) Defendant further argues that documents about how Experian treats zero-balance current and closed accounts are irrelevant to the Dominium account at issue, which was a collection account that was neither current nor closed, and is thus an attempt by Plaintiffs "to 'roam in the shadow of relevancy and . . . explore matter[s] which [do] not presently appear germane on the theory that [they] might conceivably become so." (*Id.* (citing Nov. 3 Order (quoting *Keller v. Pepsi Bottling Grp., Inc.*, No. 07-CV-1473 (MJD/AJB), 2007 WL 9735622, at *3 (D. Minn. Aug. 27, 2007) (citation omitted) (cleaned up))).)

The Court denies Plaintiffs Motion as to this request. While Plaintiffs' request for discovery related to the "Should we?" comment is relevant, Experian states that it has searched for and found no responsive materials. When a party asserts that it has nothing more to produce, courts generally take them at their word. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (citation omitted) ("[T]he Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable."). Moreover, even if such materials did exist, they would be subject to the Court's November 3 Order's proportionality window for scrub-related documents, and would almost certainly fall outside that window's May 1, 2019 discoverability date.

14

Therefore, the Court denies Plaintiffs' Motion as to the request for documents that relate to the "Should we?" comment because no additional responsive discovery exists that the Court can order Defendant to produce.

### D.    Request Four: The Documents Regarding Version 1.1's Design Requirements

Plaintiffs next claim that, in noncompliance with the Court's November 3 Order, Defendant has failed to produce requested

> [d]ocuments that explain why the version 1.1 design requirements states Experian will only exclude "Zero balance & account is current" but Experian has stated in interrogatories it excludes "Any balance amount & account is current." Ex. 5 at 9.

(Pls.' Mem. Supp. at 6.) Plaintiffs make no specific relevance and proportionality arguments in their Memorandum regarding this request.

Defendant responds that this request demonstrates Plaintiffs' fundamental misunderstanding of Experian's Manual and claims that Plaintiffs misquote Experian's interrogatory responses and ignore publicly available information that answers their request. (Def.'s Mem. Opp'n at 20.) Defendant argues that it excludes closed accounts from its scrub because the *White* Order—which is publicly available—requires it to, and that Plaintiffs have not pointed to any place in Defendant's interrogatory responses where it claimed that it excludes "Any balance amount & account is current" from its scrub. (*Id.* at 20–21.) Finally, Defendant contends that, here again, Plaintiffs seek irrelevant information about closed accounts because the relevant account in this action—Dominium—was not a closed account. (*Id.* at 21–22.)

15

The Court grants Plaintiffs' request as to these documents. Plaintiffs' request for discovery about alleged discrepancies in how Experian's scrub included or excluded accounts seeks relevant and, subject to the Court's November 3 Order and the date range in it, proportional discovery. The Court finds that the alleged inconsistencies between Experian's exclusions of certain accounts from its bankruptcy scrub procedures is not what gives these documents their relevance; rather, these materials are relevant because, "[i]n a case that turns on the reasonableness of a bankruptcy scrub, documents providing information about how Experian conducts that scrub are relevant." (Nov. 3 Order at 7.) Thus, these documents are relevant.

As to proportionality, the Court finds that this information is important to resolving the central issues at stake in this action; is within Defendant's control; and that the burden or expense of obtaining this discovery in this resource-intensive case with an uncertain amount in controversy is outweighed by the likely benefit of that information, particularly where Defendant's resources outstrip Plaintiffs'. Therefore, documents that say "Zero balance & account is current" or that elaborate on that statement need to be produced, and so do documents that say "Any balance amount & account is current" or that elaborate on that statement. This will include documents explaining the alleged inconsistency between the version 1.1 design requirements and interrogatory responses, if any, but will also reach a broader array of responsive materials that likely do not concern this alleged inconsistency. Therefore, subject to the requirements contained in the Court's November 3 Order, the Court grants Plaintiffs' Motion as to the request for these documents and orders Defendant to fully produce responsive materials.

**E.    Request Five: The Documents Encompassed by the System Requirements and Design Manual**

Plaintiffs next asks this Court to compel Defendant to comply with the Court's November 3 Order and produce

> [a]ny documents/reports/data encompassed by this document [the System Requirements and Design Manual]. For example, as mentioned on page 16 in section 4.6.2: Input BK 7 Trade Update Transaction file; the Scrub Error reports; and the Scrub Metrics reports for the last 5 years. Ex. 5.

(Pls.' Mem. Supp. at 6.) Plaintiffs make no specific relevance or proportionality arguments in their Memorandum regarding this request.

Defendant responds that Plaintiffs seem to be requesting certain quality control reports, but they offer no reason why these reports used to troubleshoot a misfunctioning scrub are relevant when there is no allegation in the Complaint that the scrub failed to function as designed regarding Plaintiffs' Dominium account. (Def.'s Mem. Opp'n at 22.) Defendant points out that Plaintiffs make no relevance argument at all specific to this request. (*Id.* at 24.) Moreover, Defendant claims that Plaintiffs' request for "any" documents is clearly disproportional, as it is not time limited, would encompass thousands of documents stretching back over a decade, and would include documents for potentially any consumer file on which Experian's scrub has ever run. (*Id.* at 22–24.)

The Court grants in part and denies in part Plaintiffs' Motion as to this request. As to this request's specific relevance and proportionality, neither in their Memorandum, nor at oral argument, did Plaintiffs make an argument specific to this point. Since the Court has only the titles of the documents before it, the Court cannot tell whether a document named, for example, "Input BK 7 Trade Update Transaction file," bears on the bankruptcy

17

scrub. Thus, the Motion is denied as to that document. From their title, the scrub error reports are relevant, but, as noted by Defendant, Plaintiffs do not mention the proportionality factors. The Court finds, however, that production of scrub error reports for the period in the Court's November 3 Order is proportional based on the same analysis that applied above to those documents relating to "Zero balance & account is current" or "Any balance amount & account is current." Finally, the Court cannot, on this record, tell whether scrub metrics have anything to do with the operation of the scrub, or merely report how often or how frequently the scrub ran, and Plaintiffs do not clarify this. The Motion is, therefore, denied as to documents pertaining to scrub metrics.

### F.    Request Six: Bankruptcy Scrub-Related Materials from 2009 to the Present

Plaintiffs next ask this Court to compel Defendant to comply with the Court's November 3 Order and produce

> [a]ny and all other documents, emails, etc., that discuss Experian's bankruptcy scrub procedures, including, but not limited to, any changes/revisions made to the scrub from when it was implemented in 2009 to the present (including every version of the System Requirements & High Level Design BK Discharge since version 1.1 July 17, 2009).

(Pls.' Mem. Supp. at 6–7.) During oral argument, Plaintiffs argued that they had learned of the existence of revised versions of Experian's 2019 and 2015 bankruptcy scrub during discovery. (*See* Hr'g Tr. at 5:13–15.) Plaintiffs claim that the 2019 version, "made in June of 2019," should be produced, as it falls within the May 1, 2019 to October 5, 2020 period for which Defendant must produce discovery under the Court's November 3 Order. (*Id.* at 5:15–16.) Plaintiffs further contend that the 2015 version, while it falls outside of the May

1, 2019 to October 5, 2020 period, should nevertheless be produced because it is relevant to whether Defendant's procedures were reasonable. (*Id.* at 5:8–24.) Plaintiffs also argue that to properly understand that 2019 version, they will need to see the 2015 version that immediately preceded it. (*Id.* at 5:21–24.)

Defendant responds that Plaintiffs' request disregards the Court's November 3 Order's proportionality limitation that Experian need only produce documents for the period of May 1, 2019 through October 5, 2020, and seeks to expand the scope beyond that limitation without showing why this expansion is proportional to the needs of the case. (Def.'s Mem. Opp'n at 25.) To the extent that Plaintiffs seek production of a 2015 or 2019 "version," Defendant contends that no such versions exist. (Hr'g Tr. at 37:5–17.) If Plaintiffs are requesting responsive discovery within the Court's November 3 Order's limited period, Defendant argues that Plaintiffs' request is duplicative because Defendant has already produced that discovery in response to the Court's Order. (Def.'s Mem. Opp'n at 26.)

The Court denies Plaintiffs' Motion as to this request because the Court's November 3 Order already provides its answer. How the scrub functioned from May 1, 2019 through October 5, 2020 is relevant and proportional. (Nov. 3 Order at 8.) Therefore, to the extent that Plaintiffs seek any unproduced documents that comprise information about the changes made to the scrub during the November 3 Order's time limitations, the Court holds Plaintiffs are entitled to that discovery—a holding identical to that already found in the Court's previous Order. (*Id.*) Defendant says there are none (Def.'s Mem. Opp'n at 26.), and the Court takes it at its word. *See Prokosch*, 193 F.R.D. at 637.

19

Likewise, to the extent that Plaintiffs seek scrub-related documents outside of the November 3 Order's limiting timeframe, such documents are not proportional and Plaintiffs are not entitled to them. (*Id.*) As it did in its November 3 Order, the Court reaches this same conclusion after considering the Rule 26(b)(1) factors: how the scrub functioned between May 1, 2019 through October 5, 2020 is relevant to resolving the important issues at stake in this action—namely, the reasonableness of Defendant's procedures. As to proportionality, the amount in controversy is uncertain; Defendant has primary access to its scrub-related information, with the exception of some public information such as the *White* Order; the action has been resource-intensive, and Defendant's resources exceed Plaintiffs'. Yet, as the Court has already found, the burden of an unlimited expedition into all materials that are scrub-related would be more burdensome and expensive than the benefits to be derived by such expansive discovery. *See* Fed. R. Civ. P. 26(b)(1). Thus, the Court denies Plaintiffs' Motion as to the scrub-related materials from 2009 to the present, except to the extent already required by its November 3 Order.

### G.    Request Seven: Materials Exchanged Between Experian and the Other Credit Reporting Agencies

Finally, Plaintiffs ask this Court to compel Defendant to comply with the Court's November 3 Order and produce

> [d]ocuments/emails exchanged between the [Credit Reporting Agencies, "CRAs"] (Equifax and Trans Union) by which Experian became aware of the other CRAs' procedures as indicated by the Declaration of Experian's corporate representative Kimberly Cave.

(Pls.' Mem. Supp. at 7.) Plaintiffs argue that precisely when—and by what trigger—Defendant knew its procedures were not reasonable is highly relevant to this case. (*Id.* at

8.) To further investigate what Experian knew—and when—Plaintiffs seek an order compelling a corporate representative to testify about its knowledge of other CRA procedures. (*Id.* at 9.)

Defendant responds that its knowledge of other CRAs' procedures is not what RFP Nos. 15, 16, and 32 request, as noted by the Court's November 3 Order, and that Plaintiffs improperly seek to relitigate this already-decided issue. (Def.'s Mem. Opp'n at 28–29.) Moreover, Defendant claims that it has informed Plaintiffs it is open to an additional Rule 30(b)(6) deposition of a corporate representative, but Plaintiffs have neither noticed such a deposition, nor met-and-conferred about such a request and reached an impasse, making the instant Motion seeking to compel such a deposition unripe for decision. (*Id.* at 29–30.)

The Court denies Plaintiffs' request because it seeks the same information about Experian's alleged knowledge of "other national consumer reporting agencies' scrub procedures" as did Plaintiffs' August Motion to Compel. (Pls.' Mem. Supp. Aug. Mot. at 6–8.) After considering the relevance and proportionality of this request under Rule 26, the Court ruled on this request once before as follows:

> The difficulty, of course, is that RFP Nos. 15 and 16 do not seek information about any alleged national standard of reasonableness across the consumer reporting industry. The RFPs *as served* are the operative discovery request that Plaintiffs have made of Defendant, not an attempted amendment of that discovery request in a memorandum supporting a motion to compel. Defendant need neither search for nor produce documents bearing on any alleged industry standard of reasonableness.

(Nov. 3 Order at 11.) The Court will not entertain a second request that covers this same discovery ground. The Court denies Plaintiffs' Motion as to the request for

communications exchanged between CRAs that show Experian's knowledge of the other CRAs' procedures.

The Court also denies as unripe Plaintiffs' request for an order compelling Defendant to designate a representative to testify as to Experian's knowledge of other CRAs. On the record before this Court, Plaintiffs have neither noticed a second Rule 30(b)(6) deposition, nor—according to Defendant—have Plaintiffs met and conferred about such a deposition and reached an impasse requiring the court's decision. (Def.'s Mem. Opp'n at 29–30.) Consequently, finding no ripe dispute, the Court denies Plaintiffs' request.

### H.    Defendant's Request for an Award of Attorneys' Fees and Costs

Defendant argues Plaintiffs' Motion to Compel is substantially unjustified, showing disregard for this Court's November 3 Order by bringing a wholly frivolous and legally unsupported Motion that relitigates already-decided disputes. (*Id.* at 31–33.) According to Defendant, sanctions are warranted in the form of an award of reasonable attorneys' fees and costs incurred in opposing this frivolous Motion. (*Id.* at 31–33.) After the filing of Defendant's opposing Memorandum, Plaintiffs took no position on this request at oral argument. (*See* Hr'g Tr.)

The Court denies Defendant's request because such an award is not justified under the circumstances presented here. *See* Fed. R. Civ. P. 37(a)(5)(A)–(B). When a court grants in part and denies in part a motion to compel, Rule 37(a)(5)(C) states that the Court "may . . . apportion the reasonable expenses for the motion." Here, the Court finds that an award of fees and costs would have little positive effect; may only embolden the recipient party

and further entrench the parties in their respective positions—including in their unbecoming tendency to litigate the character of opposing counsel and not their clients' positions—and thus, that such entrenching will only serve to increase the costs of litigation in this action and will not encourage its speedy and just resolution, all of which makes an award of costs and fees unjust under the circumstances. Accordingly, each party shall bear its own costs and attorneys' fees in connection with Plaintiffs' Motion.

## IV.    CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs Thomas Lynch and Rosemary Nelson's Motion to Compel Discovery (Dkt. No. 68) is **GRANTED** in part and **DENIED** in part as set forth above;

2.    Defendant shall supplement its discovery responses accordingly **on or before June 14, 2022**; and

3.    This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order **within 14 days from the date this Order is filed**, identifying with specificity the redactions they believe are required and the basis for those redactions.

Dated: April 15, 2022     _s/ John F. Docherty_
            JOHN F. DOCHERTY
            United States Magistrate Judge