## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Lynch and Rosemary Nelson, | Case No. 20-CV-2535 (KMM/JFD) |
| Plaintiffs, | |
| v. | **ORDER ON DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| Experian Information Solutions, Inc., | |
| Defendant. | **FILED UNDER SEAL** |

This matter is before the Court on Defendant Experian Information Solutions, Inc.'s Motion to Compel the Production of Documents, Complete Interrogatory Responses, and Additional Deposition Testimony (Dkt. No. 76). This Court held a motions hearing on January 28, 2022, at which Christopher Johnson and Gregory Myers represented Defendant, and Jenna Dakroub represented Plaintiffs. (*See* Hr'g Mins., Dkt. No. 104; Hr'g Tr., Dkt. No. 122.)

Defendant's Motion concerns six issues related to Request for Production ("RFP") Nos. 7, 12, and 26; Interrogatory Nos. 11 and 12; and the depositions of the Plaintiffs. (Def.'s Mem. Supp. at 3, Dkt. No. 78.) Defendant also asks this Court to award it half of its fees and costs in bringing this Motion. (*Id.* at 44.) In response to Defendant's Motion, Plaintiffs Thomas Lynch and Rosemary Nelson interpose objections and ask the Court to deny the Motion entirely. (Pls.' Mem. Opp'n at 2–3, Dkt. No. 90.) To resolve these disputes, the Court orders the production of only that information which is both relevant and proportional to this case. Therefore, Defendant's Motion is granted in part and denied in part, as set forth below.

# I.    BACKGROUND

Defendant is a credit reporting agency. As such, it is governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendant gathers, evaluates, and disburses information to inquiring third parties about consumers' identities, credit histories, bankruptcy filings, and creditworthiness. (Compl. ¶¶ 7, 9, 14, 16, Dkt. No. 1.) Defendant's reporting accuracy is critical because lenders rely on Defendant's reports to decide whether to extend credit to consumers. (*Id.* ¶ 16.) Under the FCRA, when credit reporting agencies like Defendant prepare a consumer report, they "shall follow *reasonable* procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). To ensure the accuracy of its reports for consumers going through bankruptcy, Experian's procedure is to automatically update the status of pre-bankruptcy collection accounts when consumers' debts are discharged in bankruptcy. This is meant to ensure Defendant's reports accurately reflect that those accounts have been discharged. (Def.'s Mem. Opp'n at 5.) Experian refers to these automatic procedures as its "bankruptcy scrub." (*Id.*)

Plaintiffs are married persons who are considered consumers under the FCRA. (Compl. ¶¶ 4–6.) Plaintiffs filed for bankruptcy in May 2019 and received an Order of Discharge in August 2019. (*Id.* ¶¶ 31–33.) Among Plaintiffs' joint debts that were discharged in bankruptcy was "the Dominium Account" that had a balance owing of $5,538 before it was discharged. (*Id.* ¶¶ 40–41.) Although Plaintiffs' Dominium Account was discharged through bankruptcy, Plaintiffs allege that Experian was still reporting the Dominium Account balance as owing rather than discharged as of September 2020—more

than a year after Plaintiffs' Order of Discharge—even though Defendant knew or should have known that this debt had been discharged through bankruptcy. (*Id.* ¶¶ 31–33, 36–42, 67–68.) Plaintiffs' chief claim is that Defendant's failure to follow reasonable procedures, as required by § 1681e(b), caused this error. (Compl. ¶¶ 1, 66, 70, 74.) To support their claim that the bankruptcy scrub is not a reasonable procedure, Plaintiffs seek discovery into how Experian's bankruptcy scrub operates and whether Experian knew of any shortcomings in the bankruptcy scrub order. Plaintiffs state that, because of Defendant's failure, they suffered "credit harm, loss of credit opportunity, credit denials, . . . other financial harm, . . . interference with daily activities, as well as emotional distress." (*Id.* ¶¶ 46, 48, 72.) Thus, Plaintiffs assert that Defendant is liable for "actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*" (*Id.* ¶ 74.)

Defendant denies Plaintiffs' claims and asserts that Experian created reasonable procedures to ensure accurate consumer credit reporting, applied these procedures to Defendant's reporting on Plaintiffs' Dominium Account, caused no damage to Plaintiffs, and so is not liable to Plaintiffs for any violations of the FCRA under 15 U.S.C. § 1681e(b). (Answer at 2, 21–22, Dkt. No. 12.)

The case has been in discovery for approximately one year. (*See* Pretrial Sched. Order at 19.) The initial Scheduling Order has been amended twice (Dkt. Nos. 52, 67), and fact discovery closed on March 7, 2022. (Second Am. Pretrial Sched. Order at 1, Dkt. No. 67.) Relevant to the instant Motion, Defendant served its first interrogatories and RFPs on

Plaintiffs in April of 2021, and deposed each Plaintiff in September of 2021. (Def.'s Mem. Supp. at 16, 32, 39.)

Defendant filed the instant Motion on December 20, 2021. The Motion focuses primarily, although not exclusively, on discovery relating to Plaintiffs' alleged physical and emotional injuries and damages. (Def.'s Mem. Opp'n at 3.) Specifically, Defendant moves the Court to order Plaintiffs to supplement their responses to RFP Nos. 7, 12, and 26 and Interrogatory Nos. 11 and 12, and to order Plaintiffs to participate in a second deposition. (*Id.*) Additionally, Defendant requests half of its fees and costs in bringing this Motion. (*Id.* at 44.) Plaintiffs oppose Defendant's Motion, arguing that Experian seeks discovery that Plaintiffs have already produced, have agreed to produce, or have confirmed does not exist, or alternatively, that Defendant seeks discovery that is irrelevant and disproportionate to the needs of the case. (Pls.' Mem. Opp'n at 2–3.)

## II.    GOVERNING LAW

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, "broadly" is not synonymous with "limitless"; a party can only discover what is relevant to the actual claims or defenses that are at issue. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v.*

*Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. A court may "find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery." *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-CV-2945 (PJS/HB), 2020 WL 2111349, at *3 (D. Minn. May 4, 2020) (quoting *Klein v. Affiliated Grp., Inc.*, Case No. 18-CV-949 (DWF/ECW), 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019)).

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may move a court for an order compelling the responding party's production. Fed. R. Civ. P. 37. Again, once a threshold showing of relevance has been made by the requesting party, the burden of demonstrating why information need not be provided—and thus, why a court should deny a motion to compel—is on the party resisting

5

disclosure. *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF/KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) (citation omitted).

## III.    DISCUSSION

The disputes in question relate to: (1) RFP Nos. 7, 12, and 26; (2) Interrogatory Nos. 11–12; and (3) additional depositions of the Plaintiffs. (Def.'s Mem. Supp. at 3.) Defendant also requests an award of half of its fees and costs in bringing this Motion. (*Id.* at 44.) The Court will consider each request in turn below.

### A.    Defendant's Requests for Production

First, Defendant moves the Court to order Plaintiffs to supplement their responses to RFP Nos. 7, 12, and 26. (*Id.* at 3.)

#### 1.    RFP No. 7

RFP No. 7 asks Plaintiffs to produce "[a]ll files, correspondence, notes, records, or other Documents made or kept by Plaintiffs (or anyone on Plaintiffs' behalf) regarding the subject matter of this action." (*Id.* at 16.) Defendant argues that Plaintiffs have not produced all documents responsive to this request because Plaintiff Rosemary Nelson has failed to produce her personal diary/journal, claiming that she lost it while packing in preparation for a move that did not end up occurring. (*Id.* at 16–20; Hr'g Tr. at 13:25–14:4.) Defendant argues that this diary is relevant to Ms. Nelson's alleged emotional distress damages in this action because she stated at her deposition that she documented events in her life and her daily emotions in this diary during the time she alleges that Experian injured her. (Def.'s Mem. Supp. at 16.) Thus, Experian claims that the diary may offer probative evidence on the question of whether Experian did or did not cause Ms. Nelson stress or emotional harm

during the dates alleged. (Hr'g Tr. at 33:5–34:18.) Such probative evidence is critical, Experian claims, because Ms. Nelson testified that she did not tell anyone except Mr. Lynch about her distress, but Mr. Lynch denies speaking with Ms. Nelson about her distress; thus, Defendant argues that the diary is the lone piece of evidence that allegedly corroborates Ms. Nelson's claims. (Def.'s Mem. Supp. at 17–18 n.5.) Defendant also claims that it gave Ms. Nelson repeated warnings to preserve the diary as evidence, making its loss more sanction-worthy. (*Id.* at 19.) Defendant moves the Court to either compel Ms. Nelson to produce the diary, or—if the diary is truly lost—bar Ms. Nelson "from claiming that Experian's reporting of the Dominium account caused her any emotional distress." (*Id.* at 18 (citing Fed. R. Civ. P. 37(b)–(c), (e) (discussing the broad discretion of courts to fashion appropriate sanctions, including prohibiting a party from advancing claims for which they have failed to preserve evidence)).)

Plaintiffs respond that Defendant's request that the Court impose draconian spoliation sanctions on Ms. Nelson is inappropriate and should be denied because Defendant cannot meet its burden of proving that Plaintiffs have demonstrated bad faith, nor that they have intentionally destroyed the diary. (Pls.' Mem. Supp. at 9–11.) Plaintiffs argue that Ms. Nelson unintentionally misplaced the diary while packing for a move that never occurred, and that the mere fact that her diary is absent is not enough to raise an inference of bad faith. (*Id.* at 10–11 (citing *Carr v. Carlin*, No. 3:10-CV-00237 (EJL), 2013 WL 1314327, at *19 (D. Idaho Mar. 28, 2013) ("The mere absence of a piece of evidence does not raise an inference of bad faith. If so, the requirement of bad faith would be superfluous.")).) Furthermore, Plaintiffs claim that Ms. Nelson is diligently looking for the

diary and will produce it as soon as it is found. (Hr'g Tr. at 14:7–10.) Regarding any prejudice to Experian caused by the diary's temporary loss, Plaintiffs argue that Experian cannot prove prejudice, and that the only appropriate remedy—should the Court elect to impose sanctions—would be to deny admission of the diary in the future when it is found. (Pls.' Mem. Opp'n at 11.)

The Court holds that Ms. Nelson's diary is highly relevant to the alleged damages in this action, and that ordering its production would have been proportional to the needs of the case, considering the Rule 26(b)(1) factors. The fact that the diary continues to exist but has not been produced is particularly troubling given the timing of its disappearance— shortly after Ms. Nelson gave deposition testimony that her diary could corroborate her claims of severe emotional distress. It does not serve the interests of justice to allow a plaintiff to file an action, then fail to produce nonprivileged, relevant, proportional materials when a defendant makes a legitimate request for them. However, the Court finds that Defendant's proposed remedy here for such a failure—to bar Ms. Nelson from alleging that Experian's reporting on her Dominium account caused her any emotional distress—is too harsh given the lack of any concrete proof that Plaintiffs have acted in bad faith. Moreover, there remain other sources of potential corroboration (or lack thereof) for Ms. Nelson's emotional distress claims, such as visits to medical professionals, and thus, the Court disagrees with Defendant's claim that harsh spoliation sanctions are merited because the diary represents the sole piece of potentially corroborative evidence for these claims.

Nevertheless, the Court finds that sanctions are warranted. "When a party either fails to provide information or fails to identify a witness in compliance with Rule 26(a) and

Rule 26(e), respectively, that party shall not 'use that information or witness to supply evidence on a motion, at a hearing, or at a trial,' unless the party's failure is either substantially justified or harmless." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 17-CV-5096 (WMW/BRT), 2020 WL 1617879, at *2 (D. Minn. Apr. 2, 2020), *aff'd*, 2022 WL 1072909 (Fed. Cir. Apr. 11, 2022) (citing Fed. R. Civ. P. 37). This sanction may be either self-executing (i.e., imposed without any motion), or may be in response to a motion. *Id.* Here, Defendant has moved for sanctions, but the Court has not made the finding of bad faith that would warrant the extreme sanction that Defendant proposes. *Id.* at *3. The Eighth Circuit has not articulated a black-letter test to determine whether a party's failure to disclose information should be categorized as substantially justified or harmless. *Id.* at *2. It has, however, articulated factors that a court should consider, including, "*inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* (citing *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).

Weighing these factors, the Court finds that barring Plaintiffs from introducing the diary, or portions of it, into evidence—if it is eventually found—is an appropriate sanction for Plaintiffs' failure to timely produce this evidence. The diary, or extracts from it, may be introduced by Defendant, assuming any evidentiary or other objections can be overcome.

The diary is undeniably important, as Ms. Nelson claims that she communicated her severe emotional distress in two primary ways: (1) within the diary's pages and (2) to Mr.

Lynch. Yet Mr. Lynch claims that he does not recall any such discussions, which makes the diary a critical piece of evidence to corroborate or undercut Ms. Nelson's alleged harms (although as the Court noted previously, other potential corroborative sources, such as Ms. Nelson's medical professionals, do remain). The reason for Plaintiffs' noncompliance with Federal Rule of Civil Procedure 26's requirements is an allegedly unintentional misplacing of the diary that occurred after Plaintiffs filed this lawsuit. This loss is prejudicial to Defendant, who seeks to test the alleged corroborating proof of Plaintiffs' damages claims. The timing of the diary's loss during discovery, while certainly unfairly prejudicial to Defendant, does not cause Defendant the same level of surprise that it might have had the diary been produced during discovery, then lost on the eve of trial. Yet now that fact discovery is closed, the potential disruption of allowing the diary's admission as evidence is not insubstantial, given that the parties are looking ahead to dispositive motions due in May 2022 and must be trial-ready by August 2022. (*See* Second Am. Pretrial Sched. Order at 1, 5.) Furthermore, Plaintiffs themselves suggest that the Court would be justified, if it elects to impose a sanction, in excluding the diary from admission as evidence to sanction Plaintiffs for their failure to disclose this important discovery. Therefore, finding that Plaintiffs' failure is neither substantially justified nor harmless, the diary—if found—may be admitted into evidence only by Defendant, and not by Plaintiffs. Defendant's Motion as to RFP No. 7 is thus granted, although reduced to this less severe sanction.

### 2.    RFP No. 12

RFP No. 12 asks Plaintiffs to produce "[a]ll [d]ocuments that evidence, refer, or relate to Plaintiffs' locating, hiring, or retaining counsel for this matter, including any

retention agreement(s) between Plaintiffs and their counsel and any documents or forms permitting Plaintiffs' current or former counsel to obtain their credit information." (Def.'s Mem. Supp. at 20.) Defendant argues that Plaintiffs have not produced all documents responsive to this request because, while they have produced two forms giving Hoglund & Mrozik P.L.L.C. ("Hoglund Law") authority to request credit reports, they have not produced (1) Plaintiffs' retention agreement with Price Law Group, APC, or (2) documents showing the nature of the relationship between Hoglund Law, Go Clean Credit, and Price Law Group. (*Id.* at 20–21.) Experian argues that these documents are relevant because they may show precisely when Plaintiffs learned of the alleged inaccuracies on their credit reports, as well as whether they took appropriate steps to mitigate their damages. (*Id.* at 23.) According to Defendant, such documents may provide evidence showing that Plaintiffs' injuries are less than alleged. (*Id.* at 24.) Defendant also anticipates such documents may also support Experian's defenses of failure to mitigate damages and comparative fault. (*Id.*) Furthermore, Defendant argues that its request is proportional to the needs of the case, as the burden to produce such documents in Plaintiffs' possession is small, and Plaintiffs have not satisfied their burden to show either irrelevance or undue burden. (*Id.* at 25.)

According to Defendant, both Price Law Group's retention agreement with Plaintiffs, and documents showing the nature of the relationship between Hoglund Law, Go Clean Credit, and Price Law Group, have been withheld on the basis of the attorney-client privilege and work-product doctrine, but Experian claims that Plaintiffs have not sufficiently explained why these designations apply to the withheld or redacted documents

which do not obviously seek or render legal advice, and which attorneys did not prepare in anticipation of litigation, but rather, in the regular course of business. (*Id.* at 25–28.) Experian also argues that, whatever privileges did attach to these documents, Plaintiffs waived them by producing some of these documents—namely, the Hoglund Law retention agreement. (*Id.* at 30.)

Plaintiffs respond that Experian violated Local Rule 7.1 of this District by failing to meet-and-confer with Plaintiffs on the subset of these documents that pertain to non-party Go Clean Credit, and thus, argue that the Court should deny Experian's Motion. (Pls.' Mem. Opp'n at 12–13.) Plaintiffs also contend that the documents requested are wholly irrelevant to the claims and defenses in this action because, as to the proffered reason for their relevance—the timing of precisely when Plaintiffs knew of their alleged injuries and took steps to mitigate those injuries—retainer and referral agreements contain no such information. (*Id.* at 13.) Plaintiffs further claim that caselaw on the FCRA has not even established that consumers have any duty to mitigate their damages. (*Id.* at 14.) According to Plaintiffs, "Experian is merely using discovery to attempt to bully [Plaintiffs' counsel] with a wholly unjustified audit of Price Law Group, APC's business practices, hiding behind the thin façade of seeking information pertaining to Plaintiffs' damages." (*Id.* at 15.)

The Court finds that some parts of some of the agreements which Defendant seeks have relevance, while others have no relevance to the claims or defenses of this action. First, the mere fact that a plaintiff's retainer agreement is with an attorney does not shield that agreement from disclosure under the attorney-client privilege or work-product

doctrine. "Communications that do not contain confidential information and only reveal the relationship between the parties, the purpose for which a law firm has been engaged, and the steps which the law firm intends to take in discharging its obligation to the client are not protected by the attorney-client privilege." *Burke v. Messerli & Kramer, P.A.*, No. 09-CV-1630 (ADM/AJB), 2010 WL 2520615, at *3 (D. Minn. June 15, 2010) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) (en banc)). Therefore, the Court finds that the attorney client privilege and work product doctrine present no bar to their production and proceeds to consider the relevance of these agreements.

As to relevance, Plaintiffs have made concrete claims about when they became aware of their alleged injuries, and Defendant has argued that the timing of Plaintiffs' awareness of their alleged injuries could raise fact questions about whether Plaintiffs' alleged injuries are as severe as claimed. Plaintiffs' retention agreements with Price Law Group will have a date of execution, and that date is relevant because it offers a moment in time when Plaintiffs likely knew of their alleged injuries. Beyond this narrowly relevant fact, the Court finds that the standard retention agreement that Plaintiffs have with their attorneys is irrelevant to the claims or defenses in this action. This same relevancy analysis applies to Plaintiffs' retention agreement with Go Clean Credit. As to documents showing the nature of the relationship between Hoglund Law, Price Law Group, and Go Clean Credit, or any referral Plaintiffs received from one entity for another within this trio, the Court can find no plausible justification for why such discovery is relevant to the claims or

defenses of this action, and therefore, need not consider its proportionality nor order its disclosure.

As to proportionality, the Court finds that the relevance of Plaintiffs' agreements with Price Law Group and Go Clean Credit is limited to their execution dates. Weighing the proportionality factors in Rule 26(b)(1), those dates, while they may be one factor supporting Experian's defenses of failure to mitigate and comparative fault, are not of dispositive importance to the issues at stake in this action and will not, alone, resolve the issues in dispute.[1] The information is solely in Plaintiffs' control and is not burdensome to produce in an action with an uncertain amount in controversy, although the Court notes that Defendant's resources are greater than Plaintiffs'. The factors present mixed results, and the Court finds that they counsel a narrow tailoring of the relevant discovery here to ensure that what is ordered does not outweigh the discovery's modest benefit. Thus, the

---

[1] Indeed, the extent to which consumers have a duty to mitigate their harms under the FCRA is itself not a settled legal question, so even the clearest of facts showing whether and when mitigation occurred will not resolve this dispute. *Compare Graham v. CSC Credit Servs., Inc.*, No. 02-CV-3707 (MJD/JGL), 306 F. Supp. 2d 873, 880 (D. Minn. 2004) (declining to hold that a consumer charged a higher interest rate to refinance a mortgage because of an inaccurate credit report had a duty to mitigate by refinancing the mortgage at a lower current rate, especially where the defendant lender could not show that the plaintiff could have refinanced or that he would have eliminated his damages by refinancing, and stating that "[t]he Court has been unable to locate any FCRA cases addressing a consumer's duty to mitigate damages.") *with Nadeau v. Experian Info. Sols., Inc.*, No. 20-CV-1841 (PJS/TNL), 2020 WL 7396588, at *5 (D. Minn. Dec. 17, 2020) (citing *Brossart v. DIRECTTV*, No. 11-CV-786 (DWF/JJK), 2011 WL 5374446, at *2 (D. Minn. Nov. 4, 2011) (denying a plaintiff's motion to strike a defendant's affirmative defense of failure to mitigate in an FCRA case because the Court found such a defense was not "'foreclosed by prior controlling decisions or statutes'" and that "a court in this district has allowed the affirmative defenses of failure to mitigate damages and unclean hands to survive a motion to strike in a FCRA case.")).

Court grants Defendant's Motion as to RFP No. 12, but orders only the production of the execution dates of Plaintiffs' agreements with Price Law Group and Go Clean Credit. Specifically, Plaintiffs shall label and produce the signature pages of these agreements but may redact all information other than the signatures, the typed names that are below the handwritten signatures, and the date of execution of each agreement.

### 3.    RFP No. 26

RFP No. 26 asks Plaintiffs to produce "[a]ll of Plaintiffs' medical records, patient files, and doctors' notes, including those related to any medical, psychological, psychiatric, or counseling treatment received by Plaintiffs, from January 1, 2018 to present." (Def.'s Mem. Supp. at 10.) After making this request, Defendant has since agreed to limit the scope of its request to documents generated on or after August 27, 2019. (*Id.* at 11.) Only medical (as opposed to psychological, psychiatric, or counseling) records appear to be at issue. Defendant claims that, to date, Plaintiffs have produced only heavily redacted medical records for Ms. Nelson, and no medical records for Mr. Lynch. (*Id.* at 11–12.) Experian argues that because Plaintiffs have alleged severe physical and emotional harms, they have made their medical records relevant. (*Id.* at 12.) According to Defendant, Plaintiffs have alleged "embarrassment, anguish, stress, frustration, and emotional and mental pain; . . . loss of sleep; . . . missed work by Plaintiff Thomas Lynch 'on certain days'; and . . . pregnancy-related complications for Plaintiff Rosemary Nelson." (*Id.* at 32.) During discovery, Experian also learned of an alleged visit by Ms. Nelson to a Dr. Novak in December of 2020 regarding her sleep concerns for which no records have been produced. (*Id.* at 13.) Defendant further argues that the presence or absence of attempts to seek

treatment for Plaintiff's alleged injuries is relevant to the alleged damages of this action, so whether Plaintiffs chose to visit a doctor—or not—is itself relevant. (*Id.* at 15.) Defendant also contends that these requests are not burdensome, as Plaintiffs' medical records are within Plaintiffs' control and easy to obtain and produce. (*Id.* at 14–15.)

Plaintiffs respond that Experian seeks disproportionate information that goes beyond its agreed-upon timeframe beginning on August 27, 2019 when it asks for redactions to be removed from produced documents, but to avoid burdening the Court, Plaintiffs have provided the requested unredacted records for Ms. Nelson. (Pls.' Mem. Opp'n at 7.) As to Mr. Lynch's records, Plaintiffs argue that these are irrelevant where he "has not placed a medical condition [at] issue, because, unlike Ms. Nelson, he is not seeking damages for medical harm caused by Experian's actions." (*Id.* at 8.) At oral argument, Plaintiffs claimed that Mr. Lynch seeks only garden variety emotional distress damages. (Hr'g Tr. at 14:14–18.)

The Court grants in part and denies in part Defendant's Motion as to this request. Courts must balance the right of individuals to their privacy regarding medical records with the right of a defendant to a fair trial. *See Sandoval v. Am. Bldg. Maint. Indus., Inc.,* No. 06-CV-1772 (RHK/JSM), 2006 WL 6607858, at *4 (D. Minn. Sept. 21, 2006). Procedurally, discoverability of medical records is governed by the relevancy standard of Federal Rule of Civil Procedure 26. *See Laabs v. Nor-Son, Inc.*, No. 20-CV-1399 (PAM/ECW), 2021 WL 1609184, at *11 (D. Minn. Apr. 26, 2021) (citing *Sandoval*). Under Rule 26, "information is generally discoverable if it is reasonably calculated to lead to admissible, *relevant* information." *Jensen v. Astrazeneca LP.*, No. 02-CV-4844

(JRT/FLN), 2004 WL 2066837, at *4 (D. Minn. Aug. 30, 2004) (citing Fed. R. Civ. P. 26(b) (emphasis in original)). Substantively, an individual's privacy relating to medical records is a matter of privilege, and in federal question actions, the question of privilege is governed by "[t]he common law—as interpreted by United States courts in the light of reason and experience." *See* Fed. R. Evid. 501. "There is no physician-patient privilege under federal common law, and no federal statutes create such a privilege." *Heilman v. Waldron*, No. 11-CV-1930 (JRT/SER), 287 F.R.D. 467, 472 (D. Minn. 2012) (citing *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977); *United States v. Bercier*, 848 F.2d 917, 920 (8th Cir. 1988); *Morris v. Sequa Corp.*, 275 F.R.D. 562, 567 (N.D. Ala. 2011); *Ulrich v. City of Crosby*, 848 F.Supp. 861, 879 n.24 (D. Minn. 1994)). As in *Heilman*, here, there is a strong interest in applying federal rules to an action brought under the FCRA—a federal statute. *Id.* at 473. Moreover, "there is a federal interest in refusing to apply the physician-patient privilege, in particular, in federal question cases." *Id.* Therefore, because Plaintiffs cannot claim a privilege with respect to their medical records and communications with physicians in this federal question action brought pursuant to a federal statute, Rule 26's relevancy standard governs whether these records are discoverable.

Here, in alleging severe emotional distress that impacted a pregnancy and sleep for Ms. Nelson, and sleep and the ability to work for Mr. Lynch, and in seeking damages based on those conditions, Plaintiffs' have made their medical records relevant to the claims and defenses of this action. To make its request proportional, Experian has offered to narrow its request to records generated between August 27, 2019 and the present. The Court agrees that Plaintiffs' medical records are relevant to the damages alleged in Plaintiffs' Complaint,

and that records from August 27, 2019 to the present are proportional to the needs of the case. Therefore, to the extent that Ms. Nelson has not produced medical records for the period in which she alleges that she suffered severe emotional distress—including its impact on her pregnancy and sleep, limited from August 27, 2019 to the present—Ms. Nelson shall do so. This shall include her medical records showing treatment sought from Dr. Novak regarding sleep-related concerns within that limited timeframe. Likewise, Mr. Lynch shall produce his medical records for the period in which he alleges that he suffered severe emotional distress, sleep concerns, and other conditions impacting his ability to work that he alleges Experian caused, likewise limited from August 27, 2019 to the present. Anything before August 27, 2019, may be relevant, but it is not proportional. It need not be produced and may be redacted from the records produced where required.

### B.    Defendant's Interrogatory Requests

Next, Defendant moves the Court to order Plaintiffs to supplement their responses to Interrogatory Nos. 11 and 12. (Def.'s Mem. Supp. at 3.)

#### 1.    Interrogatory No. 11

Interrogatory No. 11 asks Plaintiffs to

[d]escribe all actual damages suffered by Plaintiffs as a result of Experian's alleged actions, including the nature of each item of damage, the amount of each item of damage, the date each item of damage was incurred, the amount of compensation Plaintiffs allege entitlement to from the loss, how the figures used in compensating the value of each item of damage were computed, and all facts which form the basis of Plaintiffs' contention that Experian's acts or omissions proximately caused the item of damage.

(*Id.* at 32.) Defendant argues that Plaintiffs have alleged damages that have not yet been provided in their response to Interrogatory No. 11 or alleged in Plaintiffs' Complaint,

18

pointing to examples such as Plaintiffs' claims that they have suffered housing denials, sleep issues, and absences from work. (*Id.* at 33.) Defendant claims that Plaintiffs are "[t]reating their actual damages as a moving target" in "a poorly executed attempt to manufacture factual disputes prior to summary judgment . . . while making it extremely difficult for Experian" to obtain discovery on Plaintiffs' alleged damages. (*Id.* at 35.) Such damages, Experian argues, are clearly relevant to Plaintiffs' claims under § 1681e(b) which requires them to show actual damages, and the discovery sought is proportional because Experian asks only for the material facts supporting Plaintiffs' actual damages claims. (*Id.* at 35–36.) Plaintiffs respond that they have already agreed to supplement their interrogatory responses. (Pls.' Mem. Opp'n at 90.)

The Court holds that Defendant's unopposed request for Plaintiffs to supplement Interrogatory No. 11 is both relevant and proportional. The Court finds that a clear, thorough explanation of the particularities of each alleged harm suffered is of fundamental relevance to the claims and defenses in this action relating to damages. Given the critical importance of the discovery Defendant seeks in Interrogatory No. 11 to resolving this case, the burden or expense on Plaintiffs to provide this additional information—a burden Plaintiffs have agreed they willingly will bear—is proportional to the needs of this case. While Experian has more resources with which to litigate this action, it is indisputable that the information that Defendant seeks—the exact contours and specific characteristics of each alleged harm to Plaintiffs—is entirely within Plaintiffs' control. It is proportional to the needs of the case that Defendant understands the alleged number of harms at issue, the

alleged number of times each such harm occurred, the material facts that support each such occurrence, and each harm's assigned damages valuation individually.

Accordingly, the Court grants Defendant's Motion as to Interrogatory No. 11 and orders Plaintiffs to supplement their response to this Interrogatory by providing precisely what Experian asks for in Interrogatory No. 11. The resulting specific list should thoroughly describe each type of actual damage that Plaintiffs allege and how they concretely valued each individual harm in their damages calculation. This includes, but is not limited to, separately listing and describing with precision each alleged harm; its duration or occurrence date(s); the general scope and nature of the harm, including the date Plaintiffs became aware of the harm, and any particular consequences of that harm; the compensation amount assigned to each harm, including how Plaintiffs computed any figures used in calculating that compensation amount for each harm; and a complete and detailed list of any material facts that support Plaintiffs' claim that Defendant caused each particular harm.

### 2.    Interrogatory No. 12

Interrogatory No. 12 is similar to Interrogatory No. 11 and asks Plaintiffs to

[d]escribe and [i]dentify all humiliation, embarrassment and mental or emotional distress or similar type of injury suffered by Plaintiffs as a result of Experian's alleged actions, including all manifestations of such mental states and any medical treatment received as a result thereof, and all Persons, including, but not limited to, all medical professionals, having knowledge of Plaintiffs' humiliation, embarrassment and mental or emotional distress or similar type of injury of which Plaintiffs complain.

(Def.'s Mem. Supp. at 36.) Defendant makes similar arguments in support of Interrogatory No. 12 as it did as for Interrogatory No. 11: that Plaintiffs have alleged various harms

relating to emotional distress; that such harms are relevant to Plaintiffs' alleged damages claims under § 1681e(b) which requires a showing of actual damages; and that such discovery is proportional to the needs of the case because it can be readily obtained from Plaintiffs themselves, as well as their medical professionals or other entities with whom they discussed these harms. (*Id.* at 36–38.) In response, Plaintiffs claim they have already agreed to supplement their interrogatory responses. (Pls.' Mem. Opp'n at 16.)

The Court holds that the same relevance and proportionality analysis applies to Interrogatory No. 12 as to Interrogatory No. 11. Therefore, the Court grants Defendant's Motion as to Interrogatory No. 12 and orders Plaintiffs to supplement their response to this Interrogatory by providing a specific list thoroughly describing each alleged instance or component of Plaintiffs' humiliation, embarrassment and mental or emotional distress or similar type of injury caused by Experian's alleged actions, and any persons who knew of that humiliation, embarrassment and mental or emotional distress or similar type of injury. This list, while it may include medical professionals with knowledge of Plaintiffs' alleged injuries, is not limited to medical professionals, and shall describe *any* person with whom Plaintiffs discussed each particular harm, what was discussed, and the approximate date of any such discussions.

### C.    Additional Depositions of Plaintiffs

Defendant also moves the Court to order each Plaintiff to participate in a second, limited deposition. (Def.'s Mem. Supp. at 38.) Defendant argues that, since it deposed Plaintiffs in September of 2021, new facts have come to light during discovery that contradict Plaintiffs' deposition testimony. (*Id.* at 39.) Defendant also claims that Plaintiffs

intentionally waited to provide damages-related information until after their depositions, and Experian should thus get the chance to impeach Plaintiffs on material discrepancies between their first deposition testimony and subsequent discovery. (*Id.* at 39–43.) Defendant offers to limit the scope to half-day depositions focusing only on information obtained after the September 2021 depositions, and argues that Plaintiffs should bear the costs of their second depositions. (*Id.* at 44.)

Plaintiffs respond that Defendant chose the timing of when it deposed Plaintiffs and cannot complain afterwards that it is Plaintiffs' fault that Experian did not have the discovery that it needed to effectively depose Plaintiffs. (Pls.' Mem. Opp'n at 16.) If Experian needed third-party discovery to effectively depose Plaintiffs, then Plaintiffs argue that Experian should have subpoenaed third-parties for discovery and waited to receive those productions before noticing Plaintiffs' depositions. (*Id.* at 16–17.) Moreover, Plaintiffs contend that if impeachment is the reason that these second depositions are necessary, such a reason does not justify the time and expense of conducting second depositions when Experian may simply impeach Plaintiffs at trial based on their first depositions and the allegedly contradictory facts that Experian has gained during discovery. (*Id.* at 17–19.)

The Court finds that Defendant has not met its burden to show why a second deposition of Plaintiffs is warranted here. Federal Rule of Civil Procedure 16(b)(4) provides that a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks,*

*Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). When a deposition has been completed according to the Pretrial Scheduling Order, modifying the scheduling order to require a second deposition is disfavored absent a showing of need or some other good reason meriting a second deposition. *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2014 WL 12756820, at *13 (D. Minn. Jan. 17, 2014) (citations omitted).

Presumably when it deposed Plaintiffs, Experian knew that it might have some discovery to obtain from third-parties, and that it was waiting for some outstanding discovery requests directed to Plaintiffs in interrogatories, RFPs, and requests for admission. Experian must have known that these avenues of discovery could yield new information, yet it "'made a strategic decision . . . about when to depose [them] . . . and did not seek to hold [their depositions] open for further examination.'" *Id.* (citation omitted). "In this District, the discovery of helpful . . . new information . . . does not qualify as 'good cause' for modifying [a] scheduling order." *Id.* (quoting *EEOC v. Prod. Fabricators, Inc.*, 285 F.R.D. 418, 422 (D. Minn. 2012) and *Land O'Lakes, Inc. v. Employers Mut. Liability Ins. Co. of Wisconsin*, 846 F.Supp.2d 1007, 1017 (D. Minn. 2012) (cleaned up)). Furthermore, Defendant's argument that it has discovered helpful, new information does not provide the Court with compelling evidence that Defendant has shown diligence, but merely that the discovery process has yielded its intended result. There is no indication in the record that Plaintiffs anticipated or agreed to be deposed again at a later date. Furthermore, it is unclear why impeachment at a second deposition, almost certainly in addition to at trial, is necessary. Given that in this Order the Court grants several of

Defendant's requests for supplemental discovery responses from Plaintiffs, the Court finds that Experian will have ample discovery materials with which to try to impeach Plaintiffs at trial. Thus, the Court denies Defendant's Motion as to the request for second depositions of Plaintiffs.

### D.    Fees and Costs

Finally, Defendant asks this Court to award it half of its fees and costs in bringing this Motion pursuant to Federal Rule of Civil Procedure 37(a)(5) because Plaintiffs have misrepresented their damages claims and demonstrated the "sort of dishonesty" that "represents bad-faith behavior" and that "should be sanctioned by the Court." (Def.'s Mem. Supp. at 44–45 (citations omitted).) Plaintiffs respond that "[t]here is simply no reasonable argument for why Plaintiffs should be required to foot the bill for Experian's abusive, obscenely lengthy filing, filled with irrelevant and misleading arguments, and arguments regarding mooted issues." (Pls.' Mem. Opp'n at 20.)

The Court declines to award costs and fees. When a court grants in part and denies in part a motion to compel, Rule 37(a)(5)(C) states that the Court "may . . . apportion the reasonable expenses for the motion." The Court finds that such an award is not appropriate under the circumstances presented here where no party's position is wholly justified or unjustified. Accordingly, each party shall bear its own costs and attorneys' fees in connection with Defendant's Motion.

## IV.    CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Experian Information Solutions, Inc.'s Motion to Compel the Production of Documents, Complete Interrogatory Responses, and Additional Deposition Testimony (Dkt. No. 76) is **GRANTED** in part and **DENIED** in part as set forth above;

2. Plaintiffs shall supplement their discovery responses accordingly **on or before June 14, 2022**; and

3. This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order **within 14 days from the date this Order is filed**, identifying with specificity the redactions they believe are required and the basis for those redactions.

Dated: April 19, 2022

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

25