# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Thomas Lynch and Rosemary Nelson,

Plaintiffs,

v.

Experian Information Solutions, Inc.,

Defendant.

Case No. 20-CV-2535 (KMM/JFD)

**ORDER ON PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS; THIRD MOTION TO COMPEL; AND MOTION FOR SANCTIONS**

**FILED UNDER SEAL**

This matter is before the Court on Plaintiffs Thomas Lynch and Rosemary Nelson's Motion for *In Camera* Review of Documents Withheld on the Basis of Privilege; Third Motion to Compel Discovery Responses; and Motion for Sanctions (Dkt. No. 108). This Court held a motions hearing on March 30, 2022, at which David Chami and Jenna Dakroub represented Plaintiffs, and Christopher Johnson and Gregory Myers represented Defendant Experian Information Solutions, Inc. (*See* Hr'g Mins. at 1, Dkt. No. 128; Hr'g Tr. at 2, Dkt. No. 131.)

Plaintiffs' Motion concerns a request for *in camera* review of 10% of the documents that Experian has withheld or redacted as privileged (*see* Pls.' Ex. G at 2–7, Dkt. No. 113-4; Hr'g Tr. at 38:3–4), as well as a request that the Court order Experian to fully respond to two Requests For Production ("RFP"), RFP Nos. 15 and 16. (Pls.' Mem. Supp. at 2, Dkt. No. 110.) Plaintiffs also seek an award of attorneys' fees and costs for bringing this Motion. (*Id.*) In response to Plaintiffs' Motion, Experian interposes objections and asks the Court to deny the Motion entirely and to award Experian its reasonable expenses in defending

against it. (Def.'s Mem. Opp'n at 3, 28, Dkt. No. 123.) To resolve these disputes, the Court considers the factual basis for Plaintiffs' *in camera* review request; orders production of only that information which is both relevant and proportional; and considers whether either parties' request for sanctions is justified. Therefore, the Court denies Plaintiffs' Motion and awards Experian its reasonable costs and fees in defending against it, as set forth below.

## I.    BACKGROUND

Experian is a credit reporting agency, governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Experian gathers, evaluates, and disburses information to inquiring third parties about consumers' identities, credit histories, bankruptcy filings, and creditworthiness. (Compl. ¶¶ 7, 9, 14, 16, Dkt. No. 1.) Experian's reporting accuracy is critical because lenders rely on its reports to decide whether to extend credit to consumers. (*Id.* ¶ 16.) Under the FCRA, when credit reporting agencies like Experian prepare a consumer report, they "shall follow *reasonable* procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). To ensure the accuracy of its reports for consumers going through bankruptcy, Experian's procedure is to automatically update the status of pre-bankruptcy collection accounts when consumers' debts are discharged in bankruptcy. This is meant to ensure Experian's reports accurately reflect that those accounts have been discharged. (Def.'s Mem. Opp'n at 5.) Experian refers to these automatic procedures as its "bankruptcy scrub." (*Id.*)

Plaintiffs are married persons who are considered consumers under the FCRA. (Compl. ¶¶ 4–6.) Plaintiffs filed for bankruptcy in May 2019 and received an Order of

Discharge in August 2019. (*Id.* ¶¶ 31–33.) Among Plaintiffs' joint debts that were discharged in bankruptcy was "the Dominium Account" that had a balance owing of $5,538 before it was discharged. (*Id.* ¶¶ 40–41.) Although Plaintiffs' Dominium Account was discharged through bankruptcy, Plaintiffs allege that Experian was still reporting the Dominium Account's balance as owing rather than discharged as of September 2020— more than a year after Plaintiffs' Order of Discharge—even though Experian knew or should have known that this debt had been discharged through bankruptcy. (*Id.* ¶¶ 31–33, 36–42, 67–68.) Plaintiffs' chief claim is that Experian's failure to follow reasonable procedures, as required by § 1681e(b), caused this error. (Compl. ¶¶ 1, 66, 70, 74.) Plaintiffs state that because of Experian's failure, they suffered "credit harm, loss of credit opportunity, credit denials, . . . other financial harm, . . . interference with daily activities, as well as emotional distress." (*Id.* ¶¶ 46, 48, 72.) Thus, Plaintiffs assert that Experian is liable for "actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*" (*Id.* ¶ 74.)

Experian denies Plaintiffs' claims and asserts that it created reasonable procedures to ensure accurate consumer credit reporting, applied these procedures to its reporting on Plaintiffs' Dominium Account, caused no damage to Plaintiffs, and so is not liable to Plaintiffs for any violations of the FCRA under 15 U.S.C. § 1681e(b). (Answer at 2, 21– 22, Dkt. No. 12.)

Discovery in this case began early in 2021 when Plaintiffs served their first interrogatories and RFPs on Experian in March 2021, and Experian served responses in May 2021. (Pls.' Mem. Supp. Aug. Mot. at 2, Dkt. No. 27.) Discovery lasted for

approximately one year, with fact discovery closing on March 7, 2022. (Second Am. Pretrial Sched. Order at 1, Dkt. No. 67.) To support their claim that the bankruptcy scrub used on their Dominium Account was not a reasonable procedure, during discovery Plaintiffs have sought to discover information about how Experian's bankruptcy scrub operated, and whether Experian knew of any shortcomings in the scrub's production of accurate reporting results. Plaintiffs have filed several Motions to Compel related to their scrub-related discovery requests, each of which the Court will discuss below.

On August 26, 2021, Plaintiffs filed their first Motion to Compel Discovery. (Dkt. No. 25.) In their Motion, Plaintiffs argued that Experian's responses to, *inter alia*, RFP Nos. 15, 16, and 32, were deficient, and moved for an order compelling Experian to supplement its responses to these discovery requests. (*See* Pls.' Mem. Supp. Aug. Mot. at 4–11.) On November 3, 2021, the Court granted in part and denied in part Plaintiffs' Motion and ordered Experian to supplement its responses to RFP Nos. 15, 16, and 32 by producing all documents that would allow a full understanding of how Experian's bankruptcy scrub worked during the relevant and proportional period. (Nov. 3 Order at 9.) The Court excluded from Experian's required supplementation "documents bearing on any alleged industry standard of reasonableness[,]" such as Experian's knowledge about other national consumer reporting agencies' ("CRA") bankruptcy scrub procedures. (*Id.* at 10–11.) For reasons of proportionality, the Court expressly limited Experian's disclosure obligations as to these RFPs to materials generated between May 1, 2019 through October 5, 2020. (*Id.* at 8–9.) The Court also declined to award Experian its requested costs and fees in defending against Plaintiffs' Motion. (*Id.* at 19.)

On December 20, 2021, Plaintiffs filed their second Motion to Compel Discovery (Dkt. No. 68), again asking the Court to Order Experian to supplement its responses to RFP Nos. 15, 16, and 32, and alleging that Experian had failed to comply with the Court's November 3 Order. (Pls.' Mem. Supp. Dec. Mot. at 1–2, Dkt. No. 70.) On April 18, 2022, the Court granted in part and denied in part Plaintiffs' Motion. (Apr. 18 Order at 7, Dkt. No. 134.) Of the seven discovery requests that Plaintiffs sought to compel pursuant to RFP Nos. 15, 16, and 32, the Court denied most because Plaintiffs sought materials that the Court had already ruled were irrelevant or disproportionate in its November 3 Order (*id.* at 10, 12, 19–22); did not exist (*id.* at 14–15, 19); or were unripe (*id.* at 22). The Court granted (at least in part) two of Plaintiffs' requests, ordering Experian to supplement its responses for those requests related to details of Experian's scrub that fell within the proportionally-limited timeframe set in the Court's November 3 Order. (*Id.* at 16, 18.) Experian also sought attorneys' fees and costs in defending against Plaintiffs' Motion which the Court declined to award, both because it had granted some of Plaintiffs' requests, and because it was concerned that such an award might only serve to further entrench the parties in their positions and their tendencies to "litigate the character of opposing counsel" rather than "their clients' positions[.]" (*Id.* at 22–23.)

Plaintiffs filed the instant Motion for *In Camera* Review, Third Motion to Compel, and Motion for Sanctions on March 3, 2022. (Dkt. No. 108.) In this tripartite Motion, Plaintiffs first ask the Court to review a sample of the documents that Experian has withheld based on privilege because Plaintiffs suspect that Experian has "cloaked" its communications from discovery by systematically including attorneys or litigation-related

information in its internal correspondence. (Pls.' Mem. Supp. at 9–15.) Second, Plaintiffs

yet again ask the Court to compel Experian to produce materials in response to RFP Nos.

15–16. (Pls.' Mem. Supp. at 15–18; *see also* Pls.' Dec. Mot. Compel at 1; Pls.' Aug. Mot.

Compel at 1.) And third, Plaintiffs seek attorneys' fees and costs under both Federal Rule

of Civil Procedure 37 (governing sanctions for a parties' failure to make required discovery

disclosures) and 28 U.S.C. § 1927 (empowering courts with the discretion to order

attorneys who "unreasonably and vexatiously" multiply proceedings to personally satisfy

the resulting costs) because they claim that Experian's failure to comply with the Court's

past Orders, intentionally false claims of privilege, and its counsel's intentional or reckless

disregard for his duties have caused Plaintiffs sanctionable unnecessary hardship and

expense. (Pls.' Mem. Supp. at 19–20.) Experian asks the Court to deny these requests and

to instead award it attorneys' fees and costs in opposing Plaintiffs' Motion. (Def.'s Mem.

Opp'n at 28.) To resolve these disputes, the Court will first consider the applicable law.

## II.   GOVERNING LAW

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery regarding

"any nonprivileged matter that is relevant to any party's claim or defense and proportional

to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule

26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However, "broadly" is not synonymous

with "limitless"; a party can only discover what is relevant to the actual claims or defenses

that are at issue. *See Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

The party that seeks discovery has the burden of making a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Then, "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

When a requesting party believes its discovery requests are relevant and proportional, but a responding party has failed to provide the requested information, the requesting party may move a court for an order compelling the responding party's production. Fed. R. Civ. P. 37(a). Should a party fail to comply with a court's resulting order, various sanctions are at a court's disposal. Fed. R. Civ. P. 37(b).

## III.   DISCUSSION

The Court will take each part of Plaintiffs' Motion in turn: (A) Plaintiffs' request for *in camera* review; (B) Plaintiffs' duplicative Motion to Compel; and (C) the dueling requests for sanctions.

7

A. **Plaintiffs' Motion for *In Camera* Review of Documents Improperly Withheld as Privileged**

Plaintiffs propose a sample of 10% of the documents from Experian's 880-document privilege log (*see* Pls.' Ex. G at 2–7; Hr'g Tr. at 38:3–4) be produced for *in camera* review. (Pls.' Mem. Supp. at 9.) *In camera* review is discretionary. *See U.S. v. Zolin*, 491 U.S. 554, 572 (1989) ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court."). Generally, to obtain an *in camera* review of materials, a party must make a threshold showing of an adequate factual basis that gives rise to a reasonable, good faith belief that *in camera* review will reveal documents that are not properly protected by privilege. *See id.* (analyzing the crime-fraud exception but offering general principles about *in camera* review that courts also apply to other exceptions); *see also, e.g., Energy Creates Energy, LLC. v. Brinks Gilson Lione, P.C.*, No. 4:18-CV-00913 (DGK), 2020 WL 3087019, at \*4 n.3 (W.D. Mo. June 10, 2020) (applying *Zolin* to a different exception). "This is not a stringent standard and requires less of an evidentiary showing than is required to ultimately overcome the privilege." *Id.* at \*4 (citing *Zolin*, 491 U.S. at 572). If a party fails to meet the standard, courts uphold the claimed privilege and deny *in camera* review. *Id.* If a party successfully provides an adequate evidentiary basis for *in camera* review, then a court must decide "whether to conduct *in camera* review . . . 'in light of the facts and circumstances of the particular case,' including the volume of materials in question, their relative importance to the case, and the likelihood that the [exception] will be found to apply." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (citing *Zolin*, 491 U.S. at 572.) However, *in camera*

review is a tool used sparingly; the Eighth Circuit has stated that "the role of *in camera* inspection should be limited as it is 'contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court.'" *Barney v. Internal Revenue Serv.*, 618 F.2d 1268, 1272 (8th Cir. 1980) (quoting *Cox v. U.S. Dep't of Just.*, 576 F.2d 1302, 1311 (8th Cir. 1978)).

According to Plaintiffs, *in camera* review is warranted here for two primary reasons: (1) because Experian's privilege log descriptions are insufficient, and (2) because Experian has improperly withheld privileged materials that it has since had to unredact and provide to Plaintiffs. The Court will consider each of Plaintiffs' proffered factual bases to see if they meet the *Zolin* standard for *in camera* review.

### 1.   The Adequacy of Experian's Privilege Log

Plaintiffs claim that Experian's privilege log is suspicious because Experian has withheld or redacted documents that are ordinary business communications, shielding them by an alleged "charade" of copying Experian's legal counsel, or by stating the communications are at counsel's direction or are related to unspecified litigation. (Pls.' Mem. Supp. at 9–11.) They contend that Experian is a highly regulated business entity, but that "[t]he mere fact that Experian's business decisions have a legal angle to them . . . does not give them a shield." (Hr'g Tr. at 7:1–4.) Plaintiffs also argue that "Experian is improperly using the attorney-client and work product designations to 'cloak' emails that contain admissions adverse to Experian, and which negate some of Experian's affirmative defenses." (Pls.' Mem. Supp. at 12.)

Experian argues that Plaintiffs fail to show that an *in camera* review is warranted on this basis because its privilege log is legally sufficient. (Def.'s Mem. Opp'n at 7.)[1] According to Experian, a party claiming privilege has the burden to prove it, and such a burden is satisfied by providing a detailed privilege log and affidavit—as Experian has provided here. (*Id.* at 9 (citing *Triple Five of Minnesota, Inc. v. Simon*, No. 99-CV-1894 (PAM/JGL), 212 F.R.D. 523, 527–28 (D. Minn. Mar. 18, 2002); *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997)); Hr'g Tr. at 20:4–16.) When an *in camera* review of materials withheld based on privilege is sought, Experian notes that the burden is on the party seeking the review "to provide 'a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review may reveal documents that are not protected by privilege.'" (Def.'s Mem. Opp'n at 10 (quoting *Kmak v. Am. Century Cos.*, No. 12-CV-1111 (BP), 2015 WL 11234146, at *1 (W.D. Mo. July 17, 2015)).) Here, Experian claims, Plaintiffs ignore that attorney-client privilege is complicated where

---

[1] Experian also points out that Plaintiffs' counsel has filed similar motions for *in camera* review in two other cases in which Experian's privilege log contains many of the same privileged materials. (Def.'s Mem. Opp'n at 6–7 (citing *Campbell v. Experian Information Solutions, Inc.*, No. 20-CV-2498 (DSD/BRT) (D. Minn.) and *Coleman v. Experian Information Solutions, Inc.*, No. 21-CV-1095 (CAP/CMS) (N.D. Ga.)).) Experian notes that there are varying levels of overlap in the privileged materials for which Plaintiffs seek *in camera* review across these cases. (*Id.* at 7.) During oral arguments, Plaintiffs claimed that their counsel had asked for a review of approximately 10% of Experian's privileged materials in two other cases, but that there was significant overlap between the requested review such that Plaintiffs only asked for a review of 10–15% of Experian's privileged materials, not 10% in three cases totaling 30% of Experian's privileged materials. (*See* Hr'g Tr. at 17:15–18:23.) Had the Court found that Plaintiffs met their burden to show the threshold factual basis required for *in camera* review, these multiple *in camera* review requests before various judges would warrant more in-depth consideration in the Court's analysis. However, here, the Court finds that Plaintiffs fail to meet their burden to show that *in camera* review is warranted.

business communications can have multiple purposes, as is the case with many documents listed on Experian's log. (*Id.* at 11.) At the motions hearing, Experian further argued that, even where a communication does not include an attorney, "it's well settled that lawyers often act through agents" and that "Experian has a team of individuals . . . that serve as necessary employees through which Experian either seeks out legal advice or . . . renders legal advice." (Hr'g Tr. at 22:13–19.) As to Experian's privilege log descriptions, it claims that it has struck the appropriate balance between providing adequate information for the reason a document is privileged, while not providing so much that the privilege is destroyed. (Def.'s Mem. Opp'n at 13 n.4 (citing *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706 (CRN/MDW), 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017)).)

The Court holds that Experian's privilege log is sufficient and does not provide an adequate factual basis for *in camera* review. Federal Rule of Civil Procedure 26(b)(5)(A) requires a party withholding otherwise discoverable information to expressly claim privilege for that information and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." After conducting a review of Experian's 74-page privilege log (*see* Pls.' Ex. D, Dkt. No. 113-1), the Court finds that the log's 13 columns of information meet these requirements.

Plaintiffs specifically challenge the sufficiency of the log's descriptions, arguing the descriptions are vague, the parties referenced are not always attorneys, and the lawsuits referenced are often non-specific, but the Court finds that Experian's descriptions are sufficiently detailed to satisfy Rule 26(b)(5)(A). *See PaineWebber Grp., Inc. v. Zinsmeyer*

11

*Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999) (noting that in the application of Rule 26(b)(5)(A), "[t]he tribunal ultimately decides what information must be disclosed on a privileged document log.") For example, Experian's log includes descriptions such as "Email from Kim Cave to Peter Ikalowych and Matt Hellewell copying Mike Rozak and others describing, in partnership with Mike Rozak, proposed and recent changes to procedures related to litigation, including the bankruptcy scrub," "Email correspondence between Kim Cave, inside counsel Mike Rozak, and Experian's technical team, initiated at the direction of inside counsel to provide legal advice on Experian's technical scrub logic and checking on status of system changes due to ongoing and anticipated litigation," and "Email chain between Experian's counsel, consultant, and Equifax and Trans Union employees regarding draft document, prepared by Experian's counsel, concerning issues related to ongoing and/or anticipated litigation and contemplated system changes. Document generated pursuant to joint defense agreement." (Pls.' Ex. D at 2, 36, 69.) Experian generally provides, where applicable, the date the communication was sent or last modified, the names of both sender and recipient(s), and whether the sender/recipient(s) includes an attorney.

In this District, these descriptions are adequate. *Compare Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, No. 10-CV-4948 (JRT/JJG), 2014 WL 2865900, at *10 (D. Minn. June 24, 2014) (discussing several cases finding that privilege logs were adequate when they included certain typical categories such as the document's identification, type, source, recipients, date, description, and the privilege claimed); *with Regents of the Univ. of Minnesota v. United States*, No. 17-CV-3690 (DSD/ECW), 340

F.R.D. 293, 306 (D. Minn. 2021) (finding descriptions such as "Discussing draft documents prepared in anticipation of litigation RE: revisions to Work Plan and FSP per MPCA Comments" and "Discussion of strategy in anticipation of litigation RE: public meeting" adequate under Rule 26(b)(5)(A) where the dates of communication and senders/recipients were identified); *and Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-CV-3103 (SRN/FLN), 2015 WL 9861106, at *3 & n.1 (D. Minn. Oct. 5, 2015) (finding descriptions such as "Legal advice re license," "Legal advice re intellectual property," and "Legal advice re litigation" insufficient, but more detailed descriptions adequate), *objs. overruled*, 2016 WL 6774229 (D. Minn. Nov. 15, 2016).

Plaintiffs also take issue with the fact that some communications predate what it considers the most recent bout of scrub-related lawsuits against Experian, or do not include an attorney as sender or receiver. (Pls.' Mem. Supp. at 9–12.) Without additional facts, the Court has no reason to believe that Experian is inaccurately determining that its log materials are protected by the work product doctrine or by attorney-client privilege based on the timing of the communications or their listed sender or recipients—parties who, Experian claims, are often fact-gathering at the behest of Experian's legal team. (*See* Hr'g Tr. at 14:17–21 ("In anticipation of litigation, that's work product [doctrine]. Attorney-client [privilege] does not need to be in anticipation of litigation.") *See also United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (noting that "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case[,]" and protecting "material prepared by agents for the attorney as well as those prepared by the attorney himself"); *Upjohn Co. v. United*

*States*, 449 U.S. 383, 390 (1981) (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

Likewise, without additional facts, the Court finds that Experian's general references to litigation-related purposes as the basis for withholding materials—without naming a specific case—does not exclude those communications from the attorney-client privilege's protections, and Plaintiffs have provided no legal authority to the contrary. *See PaineWebber*, 187 F.3d at 991–92 (quoting *Upjohn*, 449 U.S. at 389 (stating that the attorney-client privilege is built on the broad legal principle "that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client.") and *Diversified Indus., Inc., v. Meredith*, 572 F.2d 596, 600–01 (8th Cir. 1977) (applying attorney/client "privilege to communications to and from corporate attorneys investigating their client's possible violations of federal . . . law.")).

In sum, the Court finds that Plaintiffs' challenge to the descriptions in Experian's privilege log and the individuals or purposes it lists do not provide a factual basis adequate to support a good faith belief that *in camera* review is warranted here.

## 2.    Experian's Alleged Discovery Abuses

The Court also finds Plaintiffs' second argument—that Experian has acted in bad faith by improperly withholding information as privileged—is equally unconvincing. Plaintiffs argue that their suspicions of improper privilege claims are well-founded based on Experian's past "abusive" attempts to redact emails that contained facts that contradict Experian's position or affirmative defenses. (Pls.' Mem. Supp. at 12–14.) Plaintiffs admit,

14

however, that Experian removed the improper redactions on emails in this case after Plaintiffs brought to its attention that it was improperly withholding these particular emails, and ultimately unmasked "60 to 80 pages of documents" after conducting a review of its withheld, privileged materials. (*Id.* at 13 n.6; Hr'g Tr. at 8:12–16.) Experian claims that Plaintiffs' insistence that it is a bad actor generally—based on an unintended mistake that it immediately corrected when notified—is not enough of a factual basis to warrant *in camera* review. (Def.'s Mem. Opp'n at 14–17.) While Experian admits that Plaintiffs identified emails that Experian had inadvertently improperly redacted, Experian argues that it took prompt action to unredact the emails in question and voluntarily conducted a full review of its privilege claims to ensure that it had made no additional errors. (*Id.* at 14.)

On these facts, the Court cannot form a good faith belief that *in camera* review is warranted because it will likely turn up intentionally and improperly withheld materials. "Generally, a party must make a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review may reveal documents that are not protected by privilege." *Kmak*, 2015 WL 11234146, at *1 (citing *Zolin*, 491 U.S. at 572). Plaintiffs repeatedly claim that, rather than defending its position in this case on the merits, Experian has resorted to unethical behaviors such as "cloaking" discoverable materials that are damning to it. (*See* Pls.' Mem. Supp. at 12–13.) Courts have found such allegations about parties' minor discovery mistakes improper. *See PaineWebber*, 187 F.3d at 993 (discussing minor mistakes during discovery as "the kinds of errors and oversights that are apt to attend the process of claiming privilege for a large group of corporate documents"

and that "[i]t is improper to infer nefarious intent or bad faith from what appear to be ordinary discovery errors.").

Here, Experian admitted its mistake and unredacted the emails in question, then took action to seek out and unredact any other similar mistakenly withheld materials. The Court has no reason to doubt Experian's representations that what remains withheld as privileged is precisely that—privileged. Moreover, courts do not use *in camera* review frequently or freely; they are constrained in this Circuit to use such reviews only when, in their good faith discretionary belief, the facts merit the extreme act of deciding issues upon evidence that is not openly produced in court. *See Kmak*, 2015 WL 11234146, at *1. Therefore, the Court denies Plaintiffs' Motion as to the request for *in camera* review because they have not provided the required factual basis to support their Motion.

### B.   Plaintiffs' Third Motion to Compel Discovery Responses from Experian Pursuant to RFP Nos. 15 and 16

Plaintiffs bring two requests in their Motion to Compel[2] that are almost identical to—and therefore, duplicative of—those already brought in Plaintiff's December 20, 2021

---

[2] During oral arguments, Plaintiffs' counsel claimed, "I don't view this as a motion to compel. This motion was a motion for in camera review of select documents. I don't believe this is yet a third Motion to Compel." (Hr'g Tr. at 19:10–116.) The Court finds such a claim dubious given that Plaintiffs titled their Motion as follows: "Plaintiffs' Motion for In Camera Review of Documents Withheld on the Basis of Privilege; *Third Motion to Compel Discovery Responses*; and for Sanctions." (Pls.' Mot. at 1 (emphasis added).) And this is not merely an empty label; Plaintiffs' Third Motion to Compel argues that "Experian should be compelled to produce complete discovery responses, responsive to RFP #s 15 and 16." (*See* Pls.' Mem. Supp. at 15.) Therefore, the Court finds that Plaintiffs' puzzling arguments that this is not a Third Motion to Compel productions relating to RFP Nos. 15–16 is meritless and proceeds with the understanding that this is a Third Motion to Compel related to these RFPs.

Motion to Compel, and—for some—also brought in Plaintiff's August 26, 2021 Motion to Compel before that. (*Compare* Pls.' Mem. Supp. at 15–18 *with* Pls.' Mem. Supp. Aug. Mot. at 6–8 *and* Pls.' Mem. Supp. Dec. Mot. at 6–7, 13, 20–22.) Plaintiffs renewed these two requests brought in December related to RFP Nos. 15 and 16 in their instant March Motion, before the Court had issued its decision on the December requests. The Court has since issued an Order ruling on these requests, and for this reason, declines to rule differently on the same requests for a second (and in some cases a third) time. (*See* Apr. 18 Order at 13–15, 19, 21.) Therefore, the Court denies these requests.

Because the Court orders sanctions as a result of this Motion, the Court will briefly review the substance of Plaintiffs' duplicative Third Motion to Compel. Plaintiffs seek responses to two RFPs which have now been the subject of three of Plaintiffs' Motions to Compel—in August, December, and in their instant Motion—and which the Court has ruled on various sub-parts of in November, April, and now again in this Order. RFP No. 15 asks Experian to produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing [of] a bankruptcy." (Pls.' Ex. 1 at 6, Dkt. No. 71-1.) RFP No. 16 is identical but for one word, requesting that Experian produce "[a]ll documents related to procedures followed and action taken to assure that pre-bankruptcy debts are reported as included in bankruptcy following the filing [of] a bankruptcy *discharge*." (*Id.* (emphasis added).) Plaintiffs ask for two productions from Experian—identical to two requests brought in their December Motion to Compel—that they argue are responsive to RFP Nos. 15–16, as follows:

17

### 1. Request One: The Documents Related to the "Should we?" Comment

Plaintiff's first request brought under these RFPs is for

> [d]ocuments that either answer or pertain to the question on page 9 of the System Requirements & High-Level Design document . . . "Zero balance & account is current–We are not checking for zero balance. Should we?" Doc. 83.

(Pls.' Mem. Supp. at 15; *see also* Pls.' Mem. Supp. Dec. Mot. at 13 (bringing the same request); Def.'s Mem. Opp'n at 18 ("Experian is unclear why Plaintiffs are forcing the Court to consider this issue yet again, given that the Court's decision on Plaintiffs' second motion to compel remains pending.").) The Court carefully considered the parties' arguments regarding this request in its April Order (which the Court will not repeat again here) and denied Plaintiffs' Motion as to this request because Experian represented that it had searched for responsive materials, but had found none. (Apr. 18 Order at 13–15.) The Court also noted that, even if Experian had located responsive materials, those materials would be subject to the Court's proportionality window between May 1, 2019 through October 5, 2020 for scrub-related documents set by its November 3 Order, and thus, such materials would likely fall outside of this window because the comment was written in 2009. (*Id.* at 14–15.) Plaintiffs now bring this same question before the Court for a second time, apparently expecting a different answer. Plaintiffs will not get one. The Court denies this request as duplicative.

### 2. Request Two: Bankruptcy Scrub-Related Materials from 2009 to the Present and Materials Exchanged Between Experian and Other Credit Reporting Agencies ("CRAs")

Plaintiff's second request brought under RFP Nos. 15–16 is for

> [a]ny and all other documents, emails, etc., that discuss Experian's
> bankruptcy scrub procedures, including, but not limited to, any
> changes/revisions made to the scrub from when it was implemented in 2009
> to October 2020 (including every version of the System Requirements &
> High Level Design BK Discharge since version 1.1 July 17, 2009). Experian
> electronically stores information in its database in is [sic] unreadable format
> (computer code) but can generate usable documents detailing the changes.
> This is also inclusive of documents/emails exchanged between the CRAs
> (Equifax and Trans Union).

(Pls.' Mem. Supp. at 15–16; *see also* Pls.' Mem. Supp. Dec. Mot. at 6–7 (bringing the same

request), 20–22 (bringing the same request).)

Here again, the Court carefully considered the parties' arguments regarding this

request—which Plaintiffs brought as two separate requests in their December Motion—in

its April Order, and declines to recount them again here. As to the first clause of this request

regarding the bankruptcy scrub-related materials, the Court denied Plaintiffs' request in its

April Order because it found that it had already ruled on the same issue—the relevance and

proportionality of "unproduced documents that comprise information about the changes

made to the scrub during the November 3 Order's time limitations"—in its November

Order when it compelled Experian to produce materials from within the proportionally

limited window of May 1, 2019 through October 5, 2020. (Apr. 18 Order at 19 (citing Nov.

3 Order at 8).) Thus, in their instant Motion, Plaintiffs bring this same question before the

Court for a third time. The Court denies this duplicative request.

As to the second clause of their request regarding materials exchanged between the

CRAs, this request is also being brought before the Court for a third time. (*See* Def.'s Mem.

Opp'n at 26 ("Plaintiffs' attempt to (again) compel the production of those documents—in

the face of a Court Order denying that request—further demonstrates that discovery is a

moving target for Plaintiffs.").) The Court denied Plaintiffs' request in its April Order

regard CRA communications "because it seeks the same information about Experian's

alleged knowledge of 'other national consumer reporting agencies' scrub procedures' as

did Plaintiffs' August Motion to Compel." (Apr. 18 Order at 21 (citing Pls.' Mem. Supp.

Aug. Mot. at 6–8).) As the Court stated in both its November and April Orders, and as the

Court states for a third time here:

> The difficulty, of course, is that RFP Nos. 15 and 16 do not seek information
> about any alleged national standard of reasonableness across the consumer
> reporting industry. The RFPs as served are the operative discovery request
> that Plaintiffs have made of Defendant, not an attempted amendment of that
> discovery request in a memorandum supporting a motion to compel.
> Defendant need neither search for nor produce documents bearing on any
> alleged industry standard of reasonableness.

(Apr. 18 Order at 21 (citing Nov. 3 Order at 11).) During oral arguments at the motions

hearing, the Court noted the troubling repetition of this particular request:

> [RFP Nos. 15 and 16] don't ask for communications between Experian and
> other credit reporting agencies. I rather thought that this had been laid to bed
> and was very surprised to see that when it's already been the ruling of the
> Court that this material doesn't need to be turned over, there's a Motion to
> Compel this material to be turned over.

(Hr'g Tr. at 9:10–15.) As the Court refused to "entertain a second request that covers this

same discovery ground" in its April Order, so the Court again refuses to entertain a third.

(*See id.*) This request is also denied.

In sum, having reviewed the requests that Plaintiffs bring in their Third Motion to

Compel, the Court denies Plaintiffs' requests brought pursuant to RFP Nos. 15–16 because

Plaintiffs have already asked the Court to rule on these requests—and have received a

decision—sometimes more than once. *See, e.g., Vallejo v. Amgen, Inc.*, 903 F.3d 733, 748

(8th Cir. 2018) (affirming that the district court properly denied a party's attempts to relitigate already decided issues in a motion to compel discovery, and holding that such actions were sanctionable).

### C.   The Parties' Requests for Sanctions

Both parties seek an award of fees and costs. Plaintiffs claim that they should receive fees and costs in bringing this Motion because Experian's repeated failure to produce responsive materials—even when under a court order—and its knowingly false designation of materials as privileged, forced Plaintiffs to bring this Motion. (Pls. Mem. Supp. at 19–20.) Plaintiffs argue that, because of Experian's litigation misconduct, they have suffered unnecessary hardships and expenses. (*Id.* at 20.) Experian disagrees and contends that Plaintiffs "point[] to no facts or evidence warranting sanctions under either Rule 37 or § 1927." (Def.'s Mem. Opp'n at 27.) It argues that "because Plaintiffs' motion is not substantially justified," the Court should instead award Experian reasonable expenses, including attorneys' fees. (*Id.* at 28.)

> Federal Rule of Civil Procedure 37 states that, where a
>
> motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B). In its November and April Orders, the Court declined to award costs and fees, finding that "an award of expenses would be unjust" (Nov. 3 Order at 19) and "would have little positive effect" (Apr. 18 Order at 22). Here, the Court finds that an

21

award of expenses to Experian is just. First, the Court wholly denies Plaintiffs' Motion for two reasons: it lacks the adequate factual basis required to successfully bring a motion for *in camera* review, and it brings redundant requests to compel what the Court has already denied—sometimes more than once. Second, the Court finds that the reasons that a Court might deny a motion, but still decline to award costs and fees, are not present here. Plaintiffs' Motion is neither substantially justified, nor are there any other circumstances that would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). A parties' motion is "substantially justified" if it raises an issue in "'genuine dispute, or if reasonable people could differ as to the appropriateness'" of the movant's motion. *Bores v. Domino's Pizza, LLC*, No. 5-CV-2498 (RHK/JSM), 2007 WL 9735900, at *2 (D. Minn. Dec. 26, 2007) (quoting *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 766 (6th Cir. 2005)). That Plaintiffs did not bring sufficient facts to support their motion for an *in camera* review is concerning, but what convinces this Court that sanctions are warranted here is the fact that Plaintiffs have now brought the same disputes related to the same RFPs before this Court multiple times. *Vallejo*, 903 F.3d at 749. Reasonable people could not differ on the inappropriateness of such duplicative motions to compel.

Therefore, the Court awards Experian its reasonable costs and attorneys' fees in defending against this Motion, expenses which Plaintiffs share bear as the moving party. Experian's counsel must file **by May 30, 2022**, a declaration with an itemized request for reasonable fees and expenses incurred in defending against Plaintiffs' Motion. Plaintiffs may file a response addressing the reasonableness of the fees sought **no later than seven**

**days after** the declaration is filed. No further filings will be permitted without prior permission.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Plaintiffs Thomas Lynch and Rosemary Nelson's Motion for *In Camera* Review of Documents Withheld on the Basis of Privilege (Dkt. No. 108) is **DENIED**;

2.   Plaintiffs' Third Motion to Compel Discovery Responses (Dkt. No. 108) is **DENIED**;

3.   Plaintiffs' Motion for Sanctions (Dkt. No. 108) is **DENIED**;

4.   Defendant Experian Information Solutions, Inc.'s request for an award of attorneys' fees and costs is **GRANTED**; and

5.   This Order shall be unsealed in its entirety 30 days from the date it is filed unless the parties show in writing good cause to keep specific portions of the Order under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order **within 14 days from the date this Order is filed**, identifying with specificity the redactions they believe are required and the basis for those redactions.

Date: May 20, 2022                          *s/ John F. Docherty*
                                            JOHN F. DOCHERTY
                                            United States Magistrate Judge