## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Lynch and Rosemary Nelson, | No. 20-cv-2535 (KMM/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| Experian Information Solutions, Inc., | |
| Defendant. | |

Plaintiffs Thomas Lynch and Rosemary Nelson claim that Defendant Experian Information Solutions, Inc., violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. [ECF No. 1]. Specifically, Plaintiffs allege that, for a two-week period in the fall of 2020, Experian inaccurately reported that they owed several thousand dollars to their former landlord, Dominium Management Services, LLC. Over a year earlier, the Dominium debt had been discharged through the Plaintiffs' Chapter 7 bankruptcy proceeding, but Dominium erroneously sent Experian information about the account. The outdated information showed up on the Plaintiffs' credit reports until Experian's automatic procedures removed the information about the Dominium account from the reports fourteen days later.

Experian now seeks summary judgment on Plaintiffs' FCRA claims and moves to exclude the testimony of Douglas Hollon, Plaintiffs' expert witness. For the reasons that follow, Experian's motion for summary judgment is granted, the motion to exclude Mr. Hollon's testimony is denied as moot, and this action is dismissed with prejudice.

## I.   Background

### A.   The Dominium Account and Plaintiffs' Bankruptcy

In 2016, Plaintiffs co-leased an apartment from Dominium, but they eventually fell behind on their rent and were evicted. [Lynch Dep. 35–40, ECF No. 166-1; Nelson Dep. 40–45, ECF No. 166-2].[1] By 2018, they owed $5,000 in unpaid rent and interest on the Dominium account. When they filed a joint Chapter 7 bankruptcy petition on May 30, 2019, in the United States Bankruptcy Court for the District of Minnesota,[2] Plaintiffs included the full unpaid balance of the Dominium account in their petition. [ECF No. 39-1 at 4; Lynch Dep. 39]. On August 27, 2019, United States Bankruptcy Judge William Fisher issued an Order granting Ms. Nelson and Mr. Lynch a discharge under 11 U.S.C. § 727. [ECF No. 141-1]. It is undisputed that the Dominium account, which predated the Plaintiffs' bankruptcy petition, was discharged through the August 27th Order.

The Plaintiffs hoped that by obtaining bankruptcy protection, they would make a fresh start in establishing credit. After the bankruptcy discharge, Ms. Nelson opened small credit card accounts to establish positive credit history. [Nelson Dep. 73–75]. Mr. Lynch applied for credit cards, but his applications were declined. [Lynch Dep. 78–80]. To keep an eye on her credit score, Ms. Nelson purchased Experian's credit-monitoring service. [Nelson Dep. 81] She set up an Experian account for Mr. Lynch,

---

[1] Citations to deposition transcripts in this Order reference the transcripts' own page numbers, rather than those generated by the CM/ECF headers. Unless otherwise indicated, for other record citations, the Court refers to the CM/ECF generated page numbers.

[2] *In re Lynch*, No. 3:19-bk-31747, Doc. No. 1 (Bankr. D. Minn. May 30, 2019).

though it is unclear whether she also purchased the monitoring service for him. [Nelson Dep. 111].

On August 28, 2019, LexisNexis Risk Data Management Inc. ("Lexis") notified Experian of the Plaintiffs' bankruptcy discharge. Within the next eight days, Experian ran a "bankruptcy scrub" for Mr. Lynch and Ms. Nelson. The "scrub" is a procedure that automatically updates how Experian reports dischargeable accounts that predate a bankruptcy filing.[3] [ECF No. 37 ¶¶ 12–13, 17]. In addition, on the first Monday of every other month, for the eighteen months after the bankruptcy discharge, Experian's automated procedures again looked for account information that should appear as discharged in bankruptcy on the Plaintiffs' reports. This procedure is referred to as Experian's "look-back scrub." [*Id.* ¶ 14].

### B.    The September 2020 Report

Prior to the Plaintiffs' bankruptcy discharge, Experian received no report that Plaintiffs had an outstanding balance with Dominium. [ECF No. 37 ¶ 17]. As a result, neither the initial bankruptcy scrub, nor the periodic look-back scrubs identified and updated any information regarding the Dominium account on Plaintiffs' credit reports. For over a year after the discharge, that remained the case. But on September 21, 2020, Dominium erroneously notified Experian that Plaintiffs' account was in collections with a balance of $5,538. [*Id.* ¶ 18].

---

[3] Experian adopted this "scrub" procedure and the logic that automates it pursuant to a permanent injunction and class-action settlement in the Central District of California in 2008. *White v. Experian Info. Sols., Inc.*, No. 05-cv-1073, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008).

After Dominium shared this information with Experian, the scrub procedures did not immediately catch the error. Consequently, Experian reported that Plaintiffs had an outstanding debt with Dominium. On September 23, 2020, Ms. Nelson received an email from Experian's monitoring service alerting her of a thirty-seven point drop in her credit score and stating that her credit rating had gone from "fair" to "poor." [Nelson Dep. 95; ECF No. 167 at 2–8]. The email specifically mentioned that Dominium "flagged [her] account as Collections." [ECF No. 167 at 8]. Ms. Nelson told Mr. Lynch about the notification and encouraged him to check his credit score. [Nelson Dep. 98–99]. Mr. Lynch received a similar email informing him that his credit score had dropped by seventeen points because of the erroneously reported Dominium account. [ECF No. 167 at 27–28]. Ms. Nelson did not contact Experian to notify it that the Dominium account had been discharged in bankruptcy, though Mr. Lynch states that he did submit a dispute.[4]

Experian's reports did not show the Dominium account as in collections for long. The look-back scrub ran on October 5, 2020, fourteen days after Dominium's erroneous information first appeared on Plaintiffs' reports. [ECF No. 37 ¶ 19]. The look-back scrub noticed that the Dominium account predated the bankruptcy discharge and updated the

---

[4] Mr. Lynch testified that he submitted a dispute electronically. [Lynch Dep. 98–99]. Elsewhere, he stated that he attempted to do so. [ECF No. 178-1 at 12]. However, there is no evidence that Experian received any dispute—Experian's own records reflect no dispute from Mr. Lynch between December 16, 2014, and December 15, 2021. [ECF No. 179 at 2]. This factual disagreement does not create a genuine issue for trial, however, because it does not affect the Court's determination that Experian is entitled to summary judgment on Mr. Lynch's FCRA claims.

account automatically to indicate that it had been discharged. [*Id.*; ECF No. 39 at 5; ECF No. 39-1 at 7]. There is no dispute, however, that from September 21, 2020, through October 5, 2020, Plaintiffs' credit reports indicated that the Dominium account was in collections when, in fact, it had been discharged.

### C.    Effect of the Report

As noted above, both Plaintiffs' credit scores dropped after the Dominium account was reported on September 21, 2020. Yet, after the look-back scrub adjusted the status of the Dominium account to reflect that it was discharged in bankruptcy, the Plaintiffs' credit scores rebounded. [ECF No. 80 at 2–5].

Plaintiffs did not apply for credit between September 21 and October 5, 2020, while the Dominium account was reporting in error. [ECF No. 141-1 at 10]. Consequently, Plaintiffs were not denied credit during the two-week period that Experian reported the Dominium account as in collections. [ECF No. 141-1 at 10–11]. Mr. Lynch stated that he missed work throughout the summer due to the stress of having learned of Experian's error in reporting the Dominium account, but he could not recall in which year this occurred. The roofing company for which Mr. Lynch worked during the fall of 2020 had no record that he missed work during or shortly after the 14-day period of the inaccurate reporting of the Dominium debt. [ECF No. 141-1 at 16–17].

Some potential creditors made "soft" credit inquiries[5] for Mr. Lynch and Ms. Nelson during the two-week period of erroneous reporting. [ECF No. 166-4 at 62–

---

[5] Such "soft" inquiries can include requests for information initiated by outside parties deciding whether to offer credit opportunities to consumers.

65]. Specifically, Experian's records suggest that one of its subscribers received "pre-qualification consent" for a credit inquiry regarding Mr. Lynch on October 4, 2020. There were similar inquiries from Capital One Bank regarding Ms. Nelson on September 25, and October 2, 2020. [ECF No. 166-4 at 62–65].

Plaintiffs received no medical, psychiatric, or psychological treatment because of Experian's erroneous reporting of the Dominium account. [ECF No. 79-9 at 6–7]. Nonetheless, both Plaintiffs assert that they experienced emotional distress because of the erroneous report of the Dominium account. For example, Mr. Lynch alleges that the work he missed was attributable to stress he experienced from Experian's inaccurate report.

Ms. Nelson testified that when she was first notified about the drop in her credit score and realized it was due to the Dominium account showing up as in collections, she was frustrated, in a panic, and stressed. [Nelson Dep. 97–98]. She was "shocked" or "crushed" when she clicked on the alert and saw that Dominium reported a balance of over $5,000 and she "had to sit down for a couple minutes." [Nelson Dep. 98–100; *id.* at 156].

After the information was erroneously reported, Ms. Nelson testified that she found it hard to get motivated or stay motivated. [Nelson Dep. 155–56]. She was pregnant at the time Experian began reporting the Dominium account, and she had been diagnosed with gestational diabetes. She testified that the inaccurate reporting "added a lot" to the pregnancy. [Nelson Dep. 156–57]. Further, Ms. Nelson stated that she "had plans with [her] credit" and felt humiliated because she could not follow through on those plans for herself and her children. [Nelson Dep. 160–61]. After the inaccurate report,

Ms. Nelson testified that she missed work weekly or every other week, and she stayed at home in her bed. [Nelson Dep. 209–10].

## II.    Summary Judgment Motion

Plaintiffs bring distinct claims against Experian for both negligent and willful violations of the FCRA. Experian argues that it is entitled to summary judgment on the negligent violation claim because the undisputed material facts show that its procedures were reasonable, that Plaintiffs suffered no actual damages, and that no harm to the Plaintiffs could be attributed to Experian's credit reporting. Experian also asserts that summary judgment is appropriate on Plaintiffs' willfulness claim because a reasonable jury could not conclude that Experian intentionally or recklessly violated the statute. Plaintiffs argue that they have presented sufficient evidence to get to a jury on both the negligence and willfulness claims. As explained below, the Court finds that there is no genuine issue of material fact, and Experian is entitled to judgment as a matter of law on the Plaintiffs' claims.

### A.    Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must first demonstrate that the material facts are not genuinely in dispute. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 877 (8th Cir. 2020). A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). Summary judgment is proper where the non-moving party fails "'to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 844 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 322–23).

A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 10131, 1042 (8th Cir. 2011) (en banc).

## B.    The FCRA – Section 1681e(b)

In relevant part, the FCRA provides that when "a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Through this provision, the FCRA requires "reasonable— not perfect—procedures." *Rydholm v. Equifax Info. Servs., LLC*, No. 20-3425, 2022 WL

3364952, at *3 (8th Cir. Aug. 16, 2022). "The FCRA is not a strict liability statute." *Id.* at *2.

To prevail on a claim under Section 1681e(b), Plaintiffs must demonstrate that: "(1) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) [Experian] reported inaccurate credit information about [them], (3) [they] suffered harm and (4) Experian's failure to follow reasonable procedures was the cause of [their] harm." *Beers v. Experian Info. Sols., Inc.*, No. 20-CV-1797 (WMW/JFD), 2022 WL 891620, at *3 (D. Minn. Mar. 25, 2022) (quotation omitted, first alteration in original).

### D.    Plaintiffs' Negligence Claim

Experian is entitled to summary judgment on Plaintiffs' claim that it negligently violated the FCRA because Plaintiffs have failed to point to evidence that would allow a reasonable jury to conclude that they suffered actual damages. *Peterson v. Experian Info. Sols., Inc.*, No. 20-cv-606 (DSD/ECW), 2021 WL 3116073, at *3 (D. Minn. July 22, 2021) (*Peterson I*) (addressing the issue of damages first because it was dispositive of the plaintiff's negligence claim).

### 1.    Negligent Violations and Actual Damages

To avoid summary judgment on the claim that Experian negligently failed to comply with § 1681e(b), Plaintiffs must point to some evidence showing that they "suffered actual damages." *Beers*, 2022 WL 891620, at *3; *Bettcher v. Experian Info. Sols., Inc.*, No. 20-cv-0319 (WMW/HB), 2021 WL 4290907, at *5 (D. Minn. Sept. 21, 2021); 15 U.S.C. § 1681*o*(a)(1). Summary judgment may be appropriate where a plaintiff

offers no evidence that publication of erroneous reports caused any actual harm. *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) ("[A]lthough Experian sent credit reports containing late payment history to several potential creditors, . . . Paul fails to demonstrate any negative repercussions, or any actual injury, connected with the publication of the credit reports.").

"For FCRA claims, mental pain and anxiety can constitute actual damages." *Peterson v. Experian Info. Sols.*, No. 21-2863, 2022 WL 3365130, at *2 (8th Cir. Aug. 16, 2022) (*Peterson II*) (cleaned up). The Plaintiffs' own testimony may be sufficient to establish an emotional-distress injury, but courts will grant summary judgment where such testimony "does not establish the type of concrete emotional distress that is required to create a genuine injury and actual damages[.]" *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1244 (D. Minn. 2013). Where the allegations of emotional distress consist only of "vague assertions," and there is no evidence of treatment for emotional distress, physical injury resulting from emotional distress, or observations by others of any emotional distress, summary judgment may be appropriate. *Beers*, 2022 WL 891620, at *4; *Bettcher*, 2021 WL 4290907, at *6–7.

### 2.    Financial Harm

Plaintiffs argue that their negligence-based claims should go to a jury because they suffered several forms of actionable financial harm. As explained below, none of these arguments is persuasive.

### No Credit Denials

The Court finds that a reasonable jury could not conclude that either Plaintiff suffered a financial injury because of Experian's inaccurate reporting of the Dominium account. As an initial matter, Plaintiffs admitted that they did not apply for credit during the fourteen days of inaccurate reporting and that they were not denied any credit or housing during that time. Under these circumstances, no reasonable jury could find that Plaintiffs suffered a financial injury in the form of any credit denial. *See Beers*, 2022 WL 891620, at *3–4 (finding summary judgment appropriate where the plaintiff provided no evidence adverse credit action based on dissemination by the defendant of inaccurate information in her credit report; *Bettcher*, 2021 WL 4290907, at *6 (same); *Peterson I*, 2021 WL 3116073, at *3 (same).

### Temporary Drop in Credit Scores

Plaintiffs also contend that the drop in their credit scores after the inaccurate reporting of the Dominium account is sufficient evidence to support a jury finding of recoverable harm. Binding authority says otherwise. *Peterson II*, 2022 WL 3365130, at *2 ("To the extent Peterson alleges injury solely from diminution in her credit score, that type of abstract harm does not support actual damages."). A reduction in credit score, particularly one that only lasted for two weeks as in this case, is not sufficient proof of actual damages to get to a jury.

### Inaccurate Reporting Alone

Relying on *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021), Plaintiffs next suggest that evidence of a lowered credit score is "not necessary to prove

damages [because] '*the false reporting itself was the injury*.'" [Pls.' Mem. at 26[6] (emphasis added), ECF No. 165]. But Plaintiffs have taken the italicized language from *Losch* completely out of context. The *Losch* court made that observation while analyzing the issue of Article III standing. 995 F.3d at 942–44. And, citing *Losch*, 995 F.3d at 943–44, the Eighth Circuit Court of Appeals has quite recently pointed out that the FCRA's text defeats a plaintiff's claim that "the mere dissemination of inaccurate information to a third party in a credit report is enough to raise a triable damages question." *Peterson II*, 2022 WL 3365130, at *1 n.3; *see also Rydholm*, 2022 WL 3364952, at *3 ("That Rydholm's credit reports may have 'contained inaccurate information is not in itself sufficient for the imposition of liability.'" (quoting *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979))). Experian's erroneous reporting alone is not evidence of actual damages that could support a jury verdict in favor of Plaintiffs.

### *Credit Reputation*

Plaintiffs next argue that a reasonable jury could find that Experian's inaccurate reporting of the Dominium account harmed their "credit reputation." [Pls.' Mem. at 27–29]. This argument fails for several reasons. First, Plaintiffs are merely repackaging the argument that inaccurate reporting is, in and of itself, evidence of actual damages sufficient to create a triable issue on a § 1681e(b) claim. Indeed, Plaintiffs rely on the same out-of-context language from *Losch* to support it. [Pls.' Mem. at 27]. Plaintiffs

---

[6] When citing to Plaintiffs' summary-judgment briefing, the Court cites to the Plaintiffs' pagination rather than the page numbers generated by CM/ECF.

cannot create a triable issue by simply repeating the same flawed argument using slightly different words.

Second, in support of their harm-to-credit-reputation argument, Plaintiffs assert that Experian published the erroneous inclusion of the Dominium account to third parties during the relevant fourteen-day period through the "soft inquiry" credit pulls. [Pls.' Mem. at 28–29]. However, Plaintiffs point to no evidence indicating that a potential lender, landlord, credit card company, or other third party ever received a copy of their credit reports including trade line information when making such "soft inquiries." Plaintiffs' reliance on the deposition of Experian's corporate representative does not demonstrate otherwise. The Rule 30(b)(6) witness testified that it is possible for a full credit report to be sent to one of Experian's subscribers when a "soft inquiry" for pre-qualification consent or "PQC" is submitted. But aside from that statement and evidence that such "PQC" inquiries appear in Experian's records for Mr. Lynch and Ms. Nelson, Plaintiffs point no evidence that a full credit report for either Mr. Lynch or Ms. Nelson containing the inaccurate Dominium account information was ever seen by a third party through this process. Even taking the reasonable inferences from the evidence in the light most favorable to the Plaintiffs, their speculation[7] that a soft inquiry caused the inaccurate information to be published to another is not enough to avoid summary judgment.

---

[7] Plaintiffs point to Experian's testimony concerning only what *might be published* when a soft inquiry is made. [Pls.' Mem. at 29]. Indeed, Experian's 30(b)(6) witness explained that what would be provided in connection with a "PQC" inquiry depends on what was in the file, the type of inquiry that was made, and the information that was requested.

Moreover, Plaintiffs raised this reputational-harm issue for the first time in their response to Experian's summary judgment. They did not previously disclose "harm to credit reputation" as a category of damages for which they sought recovery. In their Complaint, Plaintiffs alleged that they suffered "credit harm, loss of credit opportunity, credit denials, and other financial harm," but not harm to their "credit reputation." [ECF No. 1 ¶¶ 48, 75]. Such alleged damages were likewise not disclosed in Plaintiffs' Sixth Supplemental Disclosure Statement under Rule 26(a). [ECF No. 79-10 at 7–8]. Nor did Plaintiffs identify reputational harm in their supplemental answers to Experian's damages interrogatory, despite being ordered by the Magistrate Judge to provide a complete and detailed description of their damages. [ECF No. 135 at 19–20 (Order); ECF No. 178-1 at 11–16]. Similarly, Plaintiffs failed to mention reputational harm when they updated their disclosures three days before filing their response to Experian's summary judgment motion. When a party fails to provide information that it was required to disclose under Rule 26(a), such as a computation of each category of damages, "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiffs' last-minute attempt to introduce harm-to-credit-reputation as a category of damages cannot be used to avoid summary judgment.

In sum, taking all reasonable inferences from the evidence in this case, a reasonable jury could not conclude that either Plaintiff suffered financial harm that would support a recovery for a negligent violation of § 1681e(b).

### 3.     Emotional Distress

Both Mr. Lynch and Ms. Nelson claim that Experian's inaccurate reporting of the Dominium caused them to suffer emotional distress, and they argue that a reasonable jury could find as much from the evidence in the record. As discussed below, the Court disagrees.

### *Mr. Lynch's Missed Work*

First, Plaintiffs pointed to no evidence of Mr. Lynch's alleged emotional distress in their opposition to the motion for summary judgment. During the hearing, Plaintiffs' counsel argued that Mr. Lynch's claim that Experian negligently violated the FCRA should go to a jury because there was evidence that he missed work due to the inaccurate reporting of the Dominium account. However, a payroll specialist and administrative assistant for Mr. Lynch's employer during the relevant two-week period, SGO Roofing & Construction, declared that the company has no record of Mr. Lynch missing work between September 21, 2020, and October 5, 2020. [ECF No. 141-1, Ex. F ¶¶ 10–12]. Mr. Lynch did not call in and miss a shift until October 29, 2020, three weeks after the credit report had been fixed, and provided no reason for missing work that day. [*Id.*, Ex. F ¶ 15]. SGO Roofing has no record of Mr. Lynch stating that he was missing work due to distress over inaccurate credit reporting. [*Id.*, Ex. F ¶ 15]. And when Mr. Lynch testified in his deposition that he was not able to go to work because of the inaccurate reporting, his testimony was that he missed work during the summer due to the stress experienced from Experian's reporting of the Dominium account. [Lynch Dep. 164–67]. Given that Mr. Lynch learned of the inaccurate reporting of the Dominium account in late

September 2020, and Experian's look-back scrub automatically fixed the issue in early October 2020, his testimony that he missed work in "the summer" because of Experian's inaccurate reporting fails to provide "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### Ms. Nelson's Emotional Distress

With respect to Ms. Nelson, the Court similarly finds that the evidence here "fails to raise 'the kind of severe emotional distress that warrant[s]' damages." *Peterson II*, 2022 WL 3365130, at *2 (quoting *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999)) (brackets in *Peterson II*). Ms. Nelson's testimony that she felt in a panic, frustrated, crushed, stressed, shocked, and humiliated upon learning that the Dominium account was on her credit report, is not "the sort of concrete emotional distress that is required to constitute a genuine injury and actual damages." *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 829 (8th Cir. 2013). Similarly, the Court finds Ms. Nelson's assertions that it was hard "to stay motivated or even to get motivated" [Nelson Dep. 155–56]; and that her distress "added way more to [her] pregnancy than [she] would have figured" [*id.* at 156–57], are insufficient evidence of the kind of "genuine injury" that supports a finding of damages. *See Peterson II*, 2022 WL 3365130, at *2.

The Eighth Circuit has instructed that "emotional distress damages must be supported by competent evidence of genuine injury which may be evidenced by one's conduct and observed by others." *Id.* (alterations and quotations omitted). With respect to Ms. Nelson's conduct, it bears repeating that despite her statements of long-term emotional distress, she never sought treatment from any physician, psychologist, or

psychiatrist for her symptoms. Equally important, "in the days between [Ms. Nelson] viewing the report and Experian mending the error, she did nothing to dispute the outstanding balance." *Id.*

### Corroboration

Ms. Nelson argues that her testimony regarding emotional distress is sufficiently corroborated to send her negligence claim to a jury, but the Court finds that the proffered corroboration creates no genuine issue for trial. Ms. Nelson testified that Experian's two-week period of inaccurate reporting caused her to lose sleep. And the Court agrees that lost sleep is among the physical manifestations of emotional distress that may support an award of damages under the FCRA. *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976) (affirming emotional distress damages where the plaintiff suffered "loss of sleep, nervousness, frustration and mental anguish"). However, in this case, there is no evidence to support Ms. Nelson's claim that any lost sleep was caused by severe emotional distress experienced as a result of the two weeks of inaccurate reporting.

In September 2020, when she learned of the erroneous report of the Dominium account, Ms. Nelson was in a relationship with Eric Reski. [Nelson Dep. 26]. Ms. Nelson did not tell Mr. Reski that she was upset or frustrated because of the inaccurate reporting of the Dominium account. [Nelson Dep. 27; *id.* at 158–59]. But she said that Mr. Reski is aware that she was very stressed and had trouble sleeping at the time. [Nelson Dep. 27].

Mr. Reski testified that in September and October of 2020, Ms. Nelson was pregnant with the couple's child, who was born in February 2021. [Reski Dep. 88, ECF No. 166-15]. According to Mr. Reski, Ms. Nelson never discussed filing for bankruptcy

with him. [Reski Dep. 89]. However, he was aware she had experienced emotional distress during her pregnancy. He testified that late at night, he would see her on her cell phone and that he saw her walking around "like a zombie." He suggested that she should see a doctor to "get her sleep cycle right." [Reski Dep. 96–97]. Mr. Reski was unsure how long Ms. Nelson had trouble sleeping, but he was concerned about the health of the couple's child. [Reski Dep. 97, 99]. He was unaware of other emotional distress issues for Ms. Nelson beyond trouble sleeping. [Reski Dep. 103–04]. Ms. Nelson and Mr. Reski did not discuss the reasons for her sleeplessness, and she never told him that Experian's credit reporting was the cause of any emotional harm or her inability to sleep. [Reski Dep. 102, 116–17]. Indeed, Nelson told Reski that she did not know why she was unable to sleep. [Reski Dep. 102–03].

On this record, the Court finds that a reasonable jury could not conclude Ms. Nelson's sleeplessness was caused by Experian's brief, two-week period of inaccurate reporting of the Dominium account. Even taking the reasonable inferences in the light most favorable to Ms. Nelson's claim, there is simply too tenuous a connection between the brief period of inaccurate reporting and the alleged loss of sleep for a reasonable jury to attribute the sleeplessness to Experian's conduct, especially when the sleeplessness arose during a complicated pregnancy. *Compare Dao v. Cellco P'ship*, No. 14-cv-1219 (JRT/BRT), 2015 WL 7572304, at *5 (D. Minn. Nov. 24, 2015) (granting summary judgment to defendant where the plaintiff's evidence failed to establish a reasonable connection between the defendant's conduct and the alleged emotional harm, and pointing to other contemporaneous factors that may have caused such harm), *and*

*Saumweber v. Green Tree Servicing, LLC*, No. 13-cv-3628 (SRN/SER), 2015 WL 2381131, at *7 (D. Minn. May 19, 2015) (finding the plaintiffs' affidavit testimony indicating loss of sleep and mutual corroboration of anxiety experienced by each other was an insufficient showing of actual damages to support an FCRA claim), *with Hrebal v. Seterus, Inc.*, 598 B.R. 252, 273 (D. Minn. 2019) (finding that the plaintiff supported his emotional distress claim with evidence of genuine injury where he testified about a months-long period of stress and anxiety, causing him to have a short temper, and his wife provided a confirming declaration), *and Johnson v. Collecto, Inc.*, 127 F. Supp. 3d 1012, 1019–20 (D. Minn. 2015) (determining that a reasonable jury could find actionable emotional distress where the plaintiff testified to his own "despair, anxiety, and loss of sleep," and his daughter corroborated that testimony in a declaration connecting his sleeplessness to inability to remove an item from a credit report despite repeated efforts).[8]

### Plaintiffs' Supplemental Authority

Following the submission of the case for summary judgment, Plaintiffs filed a notice of supplemental authority, [ECF No. 184], directing the Court's attention to the recent decision from this District in *Ferrin v. Experian Information Solutions, Inc.*, No. 20-cv-841 (NEB/TNL), 2022 WL 2954026 (D. Minn. July 26, 2022). The *Ferrin*

---

[8] Although Ms. Nelson testified at her deposition that she spoke to a doctor about the sleeplessness she attributes to Experian's reporting [Nelson Dep. 166], that assertion is undermined by her admissions that she has not "met with, or been examined by, any medical professional to treat or diagnose any condition caused by the events that form the basis of this litigation," nor "met with, or been examined by, a medical doctor as a result of the events that form the basis of this litigation," [ECF No. 79-9 at 6]. *See Peterson I*, 2021 WL 3116073, at *4 (finding the plaintiff's testimony that "she has increased and changed her antidepressant medication due to the report" was "undermined by her responses to Experian's requests for admissions").

court found, in relevant part, that the plaintiff had demonstrated a genuine issue for trial as to whether he "suffered emotional distress damages as a result of Experian's inaccurate reporting." *Id.*, 2022 WL 2954026, at *8. But *Ferrin* is distinguishable. There, the plaintiff told his friend about how Experian's report showed balances that should have been erased because of his bankruptcy, and his friend corroborated that the plaintiff "became stressed out and short-tempered, seemed tired and anxious, and . . . told [him] that he was struggling with anxiety and sleeplessness because Experian was reporting two of his accounts that were included in his bankruptcy as owing balances." *Id.* at *7 (internal quotation marks omitted). The *Ferrin* court denied summary judgment and left the issue of actual damages to a jury, but noted that the issue was "razor-thin." *Id.* at *8. Here, by contrast, the issue of actual damages is not razor-thin. Neither Mr. Lynch, nor Ms. Nelson offers any comparable corroboration of concrete emotional distress damages that could support a reasonable jury finding in their favor.

Because the evidence in the record would not permit a reasonable jury to find that Plaintiffs suffered any form of harm or injury for which damages are available under the FCRA, there is no genuine issue for trial and Experian is entitled to summary judgment.

### E.      Plaintiffs' Willfulness Claim

Experian asserts that the evidence does not support the Plaintiffs' willfulness claim, but Plaintiffs disagree arguing that there is evidence from which a jury could conclude that Experian knowingly or recklessly allows accounts to be inaccurately reported on a consumer's credit report after they have discharged in bankruptcy. The

Court concludes that a reasonable jury could not find a willful violation of the statute on this record, and Experian is entitled to summary judgment on this claim.

Even without "proof of injury," Plaintiffs can recover statutory damages if they can point to evidence that "Experian willfully violated the FCRA." *Beers*, 2022 WL 891620, at *4 (citing 15 U.S.C. § 1681n); *Taylor v. Inflection Risk Sols., LLC*, 519 F. Supp. 3d 517, 521 (D. Minn. 2021). This standard can be satisfied with evidence of "both knowing and reckless violations of the statute." *Beers*, 2022 WL 891620, at *4. "Recklessness involves an unjustifiably high risk of harm that was either known or so obvious that it should have been known." *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)).

Courts considering whether a party has willfully violated § 1681e(b) ask whether the defendant's reading of the statute is "objectively unreasonable." *Bettcher*, 2021 WL 4290907, at *7 (citing *Safeco*, 551 U.S. at 69). "A defendant does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Peterson I*, 2021 WL 3116073, at *4 (quoting *Safeco*, 551 U.S. at 69). "In determining whether an interpretation is objectively unreasonable, we assess whether the reading 'has a foundation in the statutory text' or whether the party interpreting the statute 'had the benefit of guidance from the courts of appeals' or federal regulatory agencies 'that might have warned it away from the view it took.'" *Hammer v. Sam's E., Inc.*, 754 F.3d 492,

502 (8th Cir. 2014) (quoting *Safeco*, 551 U.S. at 69–70), *abrogated on other grounds by Spokeo v. Robins*, 578 U.S. 330 (2016).

The record supports Experian's request for summary judgment on the Plaintiffs' willfulness claim. Experian provided evidence from a Senior Legal and Compliance Specialist, Anna Simmons, familiar with the procedures Experian employs to ensure that the information in a consumer report related to that consumer's bankruptcy is accurate. [ECF No. 37]. Ms. Simmons attests that Experian obtains public record information from its vendor, Lexis, which includes the consumer's name, the type of bankruptcy filed, the date of the bankruptcy filing and discharge, and the bankruptcy court. [ECF No. 37 ¶ 10]. Experian also requires each data furnisher (like Dominium) to undergo an investigation and vetting process before Experian accepts consumer information from them. [ECF No. 37 ¶ 6]. Experian also requires data furnishers to adhere to the Metro 2 industry standard reporting format and its guidelines. [ECF No. 37 ¶ 6; ECF No. 142]. In addition, Experian relies on consumers to inform Experian when they believe information on an Experian report is inaccurate, for example, if an account was discharged in bankruptcy. [ECF No. 37 ¶ 11].

Further, more than a decade ago, Experian adopted an automated procedure known as a "bankruptcy scrub" as a result of a stipulated injunction entered by the court in *White v. Experian Information Solutions, Inc.*, No. 05-cv-1070 DOC, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) (the "*White* Order"). [ECF No. 37 ¶ 12]. Ms. Simmons explains that the "bankruptcy scrub" implemented pursuant to the *White* Order is the first of two steps Experian uses to prevent inaccurate tradeline account

information from showing up on a consumer's report. [ECF No. 37 ¶ 13]. In the initial step, the bankruptcy scrub runs within eight days after Lexis notifies Experian that a consumer's bankruptcy has been discharged, and the scrub automatically evaluates the consumer's credit file and updates accounts, including those in collections, that predate the filing of the bankruptcy. [ECF No. 37 ¶ 13]. Next, in addition to the initial scrub that was implemented under the *White* Order, Experian adopted the "look-back scrub," a procedure that uses the same logic as the initial scrub. [ECF No. 37 ¶ 14]. At the times relevant to this case, the look-back scrub ran on the first Monday of every other month for an eighteen-month period following the bankruptcy discharge, though it has since been updated to run on the first Monday of every month. The look-back scrubs are intended to catch any accounts that have been reported since the consumer's bankruptcy discharge, but should not have been included because they were opened prior to the bankruptcy filing. [ECF No. 37 ¶ 14].

On the record in this case, Plaintiffs have failed to show that it was objectively unreasonable for Experian to conclude that adopting the steps outlined above would satisfy its obligation to use "reasonable procedures" within the meaning of § 1681e(b). There is no evidence that Experian's efforts at addressing Chapter 7 bankruptcy discharges create an unjustifiably high risk of harm to consumers. Experian's interpretation of what the statute requires does not run counter to guidance from a court of appeals or federal regulatory agency that might have alerted the company that its efforts at compliance with § 1681e(b) were inadequate. *Hammer*, 754 F.3d at 502. And courts in this District have declined to find a willful violation of the statute based on

Experian's reliance on reporting from data furnishers who meet industry standards and its implementation of the procedures required by the *White* Order. *Beers*, 2022 WL 891620, at *5 ("Beers has not identified, and the Court's research has not found, any applicable legal authority suggesting that the procedures Experian used here for reporting Chapter 7 bankruptcies *willfully* violate the FCRA.") (emphasis in original); *Peterson I*, 2021 WL 3116073, at *4 ("Experian's reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or reckless."). At the summary judgment hearing, counsel for both sides could not identify a case holding that similar procedures employed by a credit reporting agency could support a jury finding of willfulness, and this Court's own research has identified none.

Nor have Plaintiffs pointed to any evidence in this case that demonstrates Experian knowingly or recklessly violated the FCRA. Plaintiffs' arguments to the contrary are unpersuasive. For example, Plaintiffs malign Ms. Simmons' declaration describing the procedures Experian employs to ensure accurate reporting of discharged accounts as "an attorney-prepared affidavit signed by Experian's corporate representative." [Pls.' Mem. at 12]. But that declaration was made "under penalty of perjury" pursuant to 28 U.S.C. § 1746, and therefore has the same evidentiary value for summary judgment purposes as if she had testified to it under oath. Plaintiffs point to nothing to support their rather incredible insinuation that Ms. Simmons' declaration is a fabrication, nor do they identify any other reason why the Court should disregard it.

Second, Plaintiffs argue that Experian failed to "implement preventative, reasonable procedures" that could block a discharged collections account from being

reported years after a consumer has received a discharge that would presumptively cover that account. Plaintiffs note that, when asked whether it was fair to say that Experian has no policies and procedures in place to block such post-discharge reporting, Ms. Simmons answered "Yes." [ECF No. 166-4 at 75–76]. But Plaintiffs have failed to present evidence suggesting that Experian's reliance on look-back scrubs, rather than pre-reporting blocks, created an unjustifiably high risk of harm. For example, Plaintiffs point to no evidence that there was an unusually high rate of erroneous reporting despite the use of the look-back scrub, which in this case automatically deleted the incorrect account information within two weeks. Nor do they point to evidence suggesting that Dominium was a furnisher that Experian should not have relied upon to provide accurate information, such as a reporter whose data resulted in an unusually high rate of errors. *See Rydholm*, 2022 WL 3364952, at *2 ("[Section] 1681e(b) 'does not hold a [CRA] responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.'" (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004))) (second alteration in *Rydholm*).

For these reasons, the Court concludes that Plaintiffs have provided insufficient evidence for a jury reasonably to conclude that Experian willfully reported inaccurate information.

## III.   Motion to Exclude Expert Testimony

Experian moves to exclude testimony from Plaintiffs' expert witness, Douglas Hollon, and Plaintiffs oppose the motion. Here, the Court has determined that Experian is

entitled to summary judgment without relying on the facts contained in Mr. Hollon's report, so it is unnecessary to determine whether his testimony should be excluded. Accordingly, Experian's motion is denied as moot. However, the Court notes that Mr. Hollon's report covers a range of topics, and if it becomes necessary to address the admissibility of his testimony, it is very likely that Mr. Hollon would not be permitted to offer all of the opinions he has expressed.

## IV.    Order

Based on the discussion above, **IT IS HEREBY ORDERED** that Experian's motion for summary judgment (ECF No. 138) is **GRANTED**, and Experian's motion to exclude expert testimony (ECF No. 145) is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: November 10, 2022

*s/Katherine Menendez*
Katherine Menendez
United States District Judge